**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 17, 2020

*Stephens, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 17, 2020

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) ) ) | No. 95578-6 |
| | ) | EN BANC |
| SAID OMER ALI, | ) ) | |
| | ) | Filed <u>September 17, 2020</u> |
| Petitioner. | ) | |
| _____ | ) | |

MONTOYA-LEWIS, J.—"'Children are different.'" *State v. Houston-Sconiers*, 188 Wn.2d 1, 8, 391 P.3d 409 (2017) (quoting *Miller v. Alabama*, 567 U.S. 460, 480, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)). The Eighth Amendment to the United States Constitution requires our criminal justice system to address this difference when punishing children. Central to this requirement is that courts must take into account the differences between children and adults in criminal sentencing. *State v. Ramos*, 187 Wn.2d 420, 428, 387 P.3d 650 (2017). Children's ability to assess risk and make judgments varies distinctly from that of adults because the brain is not fully mature before adulthood. *Miller*, 567 U.S. at 471-72. Differences in brain development mean that children possess lessened culpability, poorer judgment, and greater capacity for change than adults. *Id.* In order to comply with the Eighth

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Amendment, courts must consider the mitigating qualities of youth and have discretion to impose a proportional punishment based on those qualities. *Houston-Sconiers*, 188 Wn.2d at 19. In *Houston-Sconiers*, we recognized these Eighth Amendment requirements and held that "[t]rial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable [Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW] range and/or sentence enhancements." *Id.* at 21.

In this case and its companion, *In re Personal Restraint of Domingo-Cornelio*, No. 97205-2, slip op. (Wash. Sept. 17, 2020), https://www.courts.wa.gov/opinions/, we consider whether the dual requirements of *Houston-Sconiers* apply retroactively on collateral review. We hold that *Houston-Sconiers* constitutes a significant and material change in the law that requires retroactive application. Further, we hold that Ali has established actual and substantial prejudice, and we remand to superior court for resentencing consistent with *Houston-Sconiers*.

## I. FACTS AND PROCEDURAL HISTORY

### A.    Factual Background

In 2008, Said Omer Ali was arrested for his involvement in a series of robberies. Each of the crimes involved a group of male perpetrators, and four victims identified Ali as one of the assailants. A jury found Ali guilty of five counts of robbery in the first degree, two counts of attempted robbery in the first degree, and

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

one count of assault in the first degree. Two of the robbery counts and the assault count carried a deadly weapon enhancement. Ali was 16 years old at the time of the crimes, but he was charged and tried in adult court.[1]

Under the SRA, Ali faced a sentence between 240 and 318 months for the substantive charges, plus 24 months each for 3 weapon enhancements. Because the weapon enhancements must run consecutively under the SRA, the standard sentence range was 312 to 390 months. RCW 9.94A.533(4)(e).

At sentencing, the State recommended imprisonment for 390 months, which was the high end of the standard range for adults and included the three mandatory consecutive weapon enhancements. The State argued that youth was not a factor that would justify an exceptional sentence, citing *State v. Ha'mim*, 82 Wn. App. 139, 916 P.2d 971 (1996), *aff'd*, 132 Wn.2d 834, 940 P.2d 633 (1997), *overruled in part by State v. O'Dell*, 183 Wn.2d 680, 696, 358 P.3d 359 (2015).

Defense counsel requested an exceptional sentence of 10 years (120 months), which was below the standard range, and argued that the presumptive range was "grossly excessive in light of the SRA purposes and that the Court does have legal and factual basis to impose something exceptional below that." 13 Verbatim Report of Proceedings (Mar. 27. 2009) (VRP) at 1419-20, 1423. The defense maintained

---

[1] There was a dispute over Ali's age at trial, but all parties now agree that Ali was 16 years old at the time of the crimes. The State concedes that Ali is entitled to an order correcting his date of birth on the judgment and sentence to reflect his true year of birth as 1992.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that the mitigating factors listed in the SRA were nonexclusive and that the court should consider Ali's age and background. Ali was only 17 years old at sentencing, and the State recommended a sentence of 32.5 years. Defense counsel argued that Ali was "a young adolescent" who "endured extreme turmoil in his young life" and that "[v]ery little will be gained by crushing his hope and spirit by sending him away for two lifetimes." 13 VRP at 1420-23.

Ali presented mitigating testimony regarding his youthfulness and difficult childhood. Dozens of members of his community submitted letters to the court requesting leniency in his sentencing. Four people also spoke on his behalf at the sentencing hearing, describing Ali as young and inexperienced but capable of reform. One community member explained that Ali "has dealt with gang dealing and peer pressure." 13 VRP at 1426. Another described him as "a young boy who is a victim for his whole life, back at home and here" because Ali was born in the midst of a civil war, grew up in refugee camps, and was placed in high school instead of middle school when he arrived in the United States at age 13. 13 VRP at 1429. A family friend asked the court to

> look this young boy on a keen eye, give him another chance to rebuild his life, become an active citizen again. And I am sure he will thrive and grow up with dignity and respect with others and to himself. To conclude my statement, as a father, a parent, and a humanitarian, our children make mistakes. And he's one of those.

13 VRP at 1428.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

After hearing the statements from the community members on Ali's behalf, the sentencing judge explained,

> Well, it's very clear that Mr. Ali has wonderful community and family support. These are individuals of great stature in the community and it is clear that he has a lot of folks looking out for him. But I can't simply look at the popular support, I have to look at the law. And the question is what does the law require me to impose and is there any justification under the law for imposing a sentence below the standard range. And I cannot find that there is any legal justification that would allow that. So I find that the law requires me to impose a sentence within the standard range.

13 VRP at 1431-32. The court imposed a total sentence of 312 months: the lowest possible sentence within the standard range with the mandatory enhancements. The low end of the standard range for each charge would run concurrently, and the mandatory deadly weapon enhancements would run consecutively. The sentencing judge acknowledged that 312 months "is a huge sentence for someone of your age. And I'm very mindful of that. But the law does not allow me to depart from it simply because of your age." 13 VRP at 1432. The court also made a point "to note, for the record that the sentence that was imposed was the lowest sentence that I legally felt I had the option of imposing in this case. I recognize Mr. Ali's young age and that is primarily the reason why that was imposed." 13 VRP at 1436.

B.   Procedural History

Ali appealed unsuccessfully, and his judgment and sentence became final in 2011. Ali filed this personal restraint petition (PRP) in the Court of Appeals in 2017,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

asserting that his continued restraint is unlawful under RAP 16.4(c)(2). He argues that even though it was filed more than a year after his judgment and sentence became final, his petition is timely under RCW 10.73.100(6)'s exception to the time bar: there has been a significant change in substantive law that is material to his sentence and sufficient reasons exist to require retroactive application of the changed legal standard. He argues that *Houston-Sconiers* provides a basis both to overcome the time bar and to entitle him to relief.

The Court of Appeals transferred his petition to this court as a successive petition that raises new grounds for relief. We set Ali's petition for full consideration on the merits and also granted review of a companion case, *Domingo-Cornelio*, slip op. at 4.

## II. ANALYSIS

Ali was sentenced as an adult for crimes he committed as a child. He seeks collateral review of that sentence. He filed this PRP more than one year after his judgment and sentence became final, so the petition is untimely unless it is based solely on a statutory exception to the time bar. RCW 10.73.090, .100. Ali relies on the exception for a significant change in the law that is material to his sentence and requires retroactive application. RCW 10.73.100(6). Ali argues he can overcome the time bar and is entitled to relief based on *Houston-Sconiers*. We agree.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In *Houston-Sconiers*, we held that when juveniles are adjudicated as adults, "[t]rial courts *must* consider mitigating qualities of youth at sentencing and *must* have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements." 188 Wn.2d at 21 (emphasis added). There, 16- and 17-year-old defendants were adjudicated as adults for a series of robberies they committed on Halloween. *Id.* at 8. The charges triggered the mandatory automatic decline statute, RCW 13.04.030(1)(e)(v), and both defendants were tried and convicted as adults. *Id.* at 12. Each was convicted of several counts of robbery in the first degree, one count of conspiracy to commit robbery, one count of assault in the second degree, and multiple firearm enhancements. *Id.* Under the SRA, one defendant faced a sentencing range of 501-543 months, which included 372 months for the firearm enhancements; the other faced a sentencing range of 441-483 months, which included 312 months for the firearm enhancements. *Id.* at 12-13. The State recommended, and the trial court accepted, an exceptional sentence below the standard range: zero months on each of the substantive counts for both defendants. *Id.* at 13. The defendants received 372 and 312 months, respectively, the full time for the consecutive weapon enhancements. *Id.* At sentencing, the judge heard mitigating testimony regarding both defendants' youth but "expressed frustration at his inability to exercise greater discretion over the sentences imposed." *Id.* The Court

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ali*
No. 95578-6

of Appeals affirmed the convictions and rejected the defendants' challenges to their sentences. *Id.*

On review, we traced the United States Supreme Court's recent decisions that "explicitly hold that the Eighth Amendment to the United States Constitution compels us to recognize that children are different." *Id.* at 18; *see, e.g.*, *Miller*, 567 U.S. at 479-80 (the Eighth Amendment forbids mandatory sentences of life without parole (LWOP) for juvenile offenders); *Graham v. Florida*, 560 U.S. 48, 74, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (the Eighth Amendment forbids LWOP for non-homicide juvenile offenders); *Roper v. Simmons*, 543 U.S. 551, 578, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (the Eighth Amendment forbids the death penalty for juvenile offenders). "In each case, [*Roper*, *Graham*, and *Miller*,] the Court found that legitimate penological goals failed to justify the sentences [that it] invalidated as applied to youth." *Id.* at 19 n.4. Those cases held that certain punishments are impermissible because of three significant differences between children and adults: (1) juveniles are more likely to possess a "lack of maturity and an underdeveloped sense of responsibility . . . [and t]hese qualities often result in impetuous and ill-considered actions and decisions," (2) "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure," and (3) "the character of a juvenile is not as well formed as that of an adult [and t]he personality

*In re Pers. Restraint of Ali*
No. 95578-6

traits of juveniles are more transitory, less fixed," and more capable of reform.

*Roper*, 543 U.S. at 569-70 (citing studies).

In *Houston-Sconiers*, we recognized that those cases invalidated certain sentences for juvenile offenders because children have diminished culpability, which renders some punishments "unconstitutionally disproportionate for youth." 188 Wn.2d at 19 n.4. We concluded that

> [t]hese cases make two substantive rules of law clear: first, "that a sentencing rule permissible for adults may not be so for children," rendering certain sentences that are routinely imposed on adults disproportionately too harsh when applied to youth, and second, that the Eighth Amendment requires another protection, besides numerical proportionality, in juvenile sentencings—the exercise of discretion.

*Id.* (citation omitted) (quoting *Miller*, 567 U.S. at 481). We held that "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system . . . . To the extent our state statutes have been interpreted to bar such discretion with regard to juveniles, they are overruled." *Id.* at 21 (footnote omitted) (citing *State v. Brown*, 139 Wn.2d 20, 29, 983 P.2d 608 (1999)). Finally, we held that "[t]rial courts *must consider* mitigating qualities of youth at sentencing *and must have discretion* to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements." *Id.* (emphasis added).

Following *Miller*, *Graham*, and *Roper*, *Houston-Sconiers* identified a *category* of sentences that are beyond courts' authority to impose: *adult standard*

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ali*
No. 95578-6

*SRA ranges and enhancements that would be disproportionate punishment for juveniles with diminished culpability*. Recognizing that "legitimate penological goals fail[] to justify" certain sentences as applied to youth, we held that courts *must* exercise discretion and consider the mitigating qualities of youth to determine whether standard SRA ranges and enhancements are proportionate for a particular juvenile in order to avoid imposing unconstitutionally disproportionate sentences. *Id.* at 19 n.4. Thus, we recognized that the Eighth Amendment requires that the sentencing judge consider the defendant's youthfulness *and* retain absolute discretion to impose a lower sentence. *Id.* at 34.

Not long after we decided *Houston-Sconiers*, we accepted review of *In re Personal Restraint of Meippen*, 193 Wn.2d 310, 440 P.3d 978 (2019). A majority of the court declined to reach the question of retroactivity in that case, instead holding that "[e]ven assuming Meippen can show that *Houston-Sconiers* is a significant, material change in the law that applies retroactively, [the petitioner was] not entitled to collateral relief because he [did] not demonstrate that any error actually and substantially prejudiced him." *Id.* at 312. As discussed below, Ali does demonstrate actual and substantial prejudice, so we must decide whether *Houston-Sconiers* is a significant and material change in the law that requires retroactive application.[2]

---

[2] Although we assumed without deciding the retroactivity question in *Meippen* and dismissed that PRP based on the petitioner's failure to establish prejudice, we are not required to conduct the analysis in that order. Whether a PRP is exempt from the one year time limit under

10

*In re Pers. Restraint of Ali*
No. 95578-6

> A.     *Houston-Sconiers* Requires Retroactive Application

Under RCW 10.73.100(6), the one year time limit to file a PRP does not apply when a petition is based on a significant change in the law, which is material to the conviction or sentence, and sufficient reasons exist to require retroactive application of the changed legal standard. *Houston-Sconiers* constitutes such a change in the law, and Ali's PRP is, therefore, timely.

> 1.     *Significant Change in the Law*

*Houston-Sconiers* represents a significant change in the law because it *requires* the sentencing court to consider the youthfulness of the defendant. A significant change in the law exists "when an intervening appellate decision overturns a prior appellate decision that was determinative of a material issue." *State v. Miller*, 185 Wn.2d 111, 114, 371 P.3d 528 (2016) (citing *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 104, 351 P.3d 138 (2015)). Prior to *Houston-Sconiers*, we held that the SRA "deprives a sentencing court of discretion to impose an exceptional sentence downward below the time specified for a mandatory deadly weapon enhancement." *Brown*, 139 Wn.2d at 22. Under *Brown*, Ali's sentencing

---

RCW 10.73.090 "is a threshold inquiry; we do not have to decide whether the entire claim is completely meritorious in order to decide whether it fits within an exception to the time bar." *In re Pers. Restraint of Schorr*, 191 Wn.2d 315, 320, 422 P.3d 451 (2018) (citing *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 99-108, 351 P.3d 138 (2015)). "To *actually obtain relief* on collateral review based on a constitutional error the petitioner must demonstrate [prejudice] by a preponderance of the evidence." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004) (emphasis added).

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

court was required to run each of his weapon enhancements consecutively and had

no discretion to run them concurrently. In *Houston-Sconiers*, we stated explicitly

that we overruled any interpretation that would bar such discretion with regard to

juveniles, citing to *Brown* and recognizing that the case failed to address juveniles.

188 Wn.2d at 21 n.5. Prior to *Houston-Sconiers*, sentencing courts did not have

discretion to consider the defendant's age at sentencing as a basis to run weapon

enhancements concurrently. Thus, *Houston-Sconiers* is a significant change in the

law because it overruled *Brown*.

Another "'test to determine whether an [intervening case] represents a

significant change in the law is whether the defendant could have argued this issue

before publication of the decision.'" *Miller*, 185 Wn.2d at 115 (alteration in original)

(internal quotation marks omitted) (quoting *In re Pers. Restraint of Lavery*, 154

Wn.2d 249, 258-59, 111 P.3d 837 (2005)). Even if Ali's sentencing court had

discretion to run the sentence enhancements concurrently before *Houston-Sconiers*,

Ali could *not* have argued that the court *must* consider the mitigating factors of his

youthfulness and that it had absolute discretion to impose *any* sentence below the

applicable SRA range and sentence enhancements. 188 Wn.2d at 21. Ali could have,

and did, argue that the court had some discretion and that it should consider

youthfulness. But before *Houston-Sconiers*, he could not have argued that the court

was *required* to consider youthfulness and could impose a lesser sentence based on

youth. Under either test proffered to demonstrate a significant change in the law,

*Houston-Sconiers* qualifies.

### 2. *Materiality*

*Houston-Sconiers* is material to Ali's case. Ali was sentenced to a standard

adult range under the SRA, which included mandatory consecutive weapon

enhancements, just as in *Houston-Sconiers*. If *Houston-Sconiers* applies

retroactively, it would affect a materially determinative issue in Ali's petition:

whether the sentencing judge had discretion to impose a lower sentence given the

mitigating testimony regarding his youthfulness. The sentencing judge heard

testimony and argument regarding Ali's youthfulness but felt that she had no

discretion to impose any sentence below the bottom of the standard range, explaining

that "the law does not allow me to depart from it simply because of your age." 13

VRP at 1432. If *Houston-Sconiers* applies retroactively, it would materially affect

Ali's sentence because it would allow the sentencing judge discretion to run the

weapon enhancements concurrently or impose any exceptional sentence downward

based on youthfulness.[3] Ali received the kind of sentence that implicates *Houston-*

*Sconiers*; therefore, that case is material.

---

[3] If, for example, the sentencing judge had run enhancements concurrently, the sentence would have been shortened by 48 months.

*In re Pers. Restraint of Ali*
No. 95578-6

The State argues that *Houston-Sconiers* is a significant change in the law but is not material to Ali's case because *Houston-Sconiers* is limited to effective life sentences. Nothing in *Houston-Sconiers* limited the holding to life sentences or the functional equivalent. In fact, one of the defendants in *Houston-Sconiers* received a sentence of 312 months, the same as Ali. 188 Wn.2d at 13. We explicitly stated that "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of *any juvenile defendant*, even in the adult criminal justice system," and that "[t]rial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the *otherwise applicable SRA range and/or sentence enhancements*." *Id.* at 21 (emphasis added).[4] *Houston-Sconiers* applies to adult standard range sentences as well as mandatory enhancements under the SRA imposed for crimes committed while the defendant was a child. This is material to Ali's case because he was sentenced as an adult under the SRA for crimes he committed as a child.

3. *Retroactivity*

*Houston-Sconiers* announced a new substantive constitutional rule that must be applied retroactively upon collateral review. Washington courts follow the test

_____

[4] *See also State v. Gilbert*, 193 Wn.2d 169, 175-76, 438 P.3d 133 (2019) ("Our opinion in [*Houston-Sconiers*] cannot be read as confined to the firearm enhancement statutes as it went so far as to question *any* statute that acts to limit consideration of the mitigating factors of youth during sentencing.").

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ali*
No. 95578-6

laid out in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) to determine whether a rule applies retroactively. *See In re Pers. Restraint of Colbert*, 186 Wn.2d 614, 623-26, 380 P.3d 504 (2016). Under *Teague*, a new rule applies retroactively on collateral review only if it is a new substantive rule of constitutional law or a watershed rule of criminal procedure. *Montgomery v. Louisiana*, __ U.S. __, 136 S. Ct. 718, 728, 193 L. Ed. 2d 599 (2016). *Houston-Sconiers* applies retroactively because it announced (1) a new rule (2) of constitutional magnitude (3) that is substantive.

First, *Houston-Sconiers* announced a new rule. Whether there is a "new rule" under *Teague* is a distinct inquiry from whether there has been a significant change in the law. *Tsai*, 183 Wn.2d at 103-05. A new rule is one that breaks new ground or imposes a new obligation, or "'if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.'" *Id.* at 104 (internal quotation marks omitted) (quoting *State v. Evans*, 154 Wn.2d 438, 444, 114 P.3d 627 (2005)). "'If before the opinion is announced, reasonable jurists could disagree on the rule of law, the rule is new.'" *Id.* (quoting *Evans*, 154 Wn.2d at 444). The dual mandates of *Houston-Sconiers*, that sentencing courts *must* consider youth and *must* have discretion to impose any exceptional sentence downward based on youth, were not dictated by existing precedent at the time Ali's conviction became final. Reasonable jurists could disagree whether the court had such discretion or whether they could

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

consider youth; however, because no prior precedent *required* courts to do so, *Houston-Sconiers* announced a new rule.

Second, we decided *Houston-Sconiers* on constitutional grounds. We concluded that "the Eighth Amendment to the United States Constitution compels us to recognize that children are different" and "courts must address those differences in order to comply with the Eighth Amendment[] with discretion to consider the mitigating qualities of youth." *Houston-Sconiers*, 188 Wn.2d at 18-19. We reached this conclusion based on rules stemming from *Roper*, *Graham*, and *Miller*, which we identified as "substantive rules": some sentences routinely imposed on adults are disproportionately too harsh when imposed on children who lack adult culpability, and the Eighth Amendment requires the exercise of discretion in order to protect such children from disproportionate punishment. *Id.* at 19 n.4.

Third, *Houston-Sconiers* announced a substantive constitutional rule. "Substantive rules . . . set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose" and include "'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Montgomery*, 136 S. Ct. at 729, 728 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002)). "Procedural rules, in contrast, are designed to

16

enhance the accuracy of a conviction or sentence by regulating 'the *manner of determining* the defendant's culpability.'" *Id.* at 730 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004)). *Houston-Sconiers* established a category of punishments that are prohibited: adult standard SRA ranges and enhancements that would be disproportionate punishment for juveniles who possess diminished culpability. It also established a mechanism necessary to effectuate that substantive rule: sentencing courts must consider the mitigating qualities of youth and have discretion to impose sentences below what the SRA mandates.

Following *Miller*, *Graham*, and *Roper*, *Houston-Sconiers* recognized that "legitimate penological goals fail[] to justify" certain sentences as applied to youth, and courts must have the discretion to impose sentences below the SRA, proportionate to the individual's culpability. 188 Wn.2d at 19 n.4. Without the context of a defendant's youthfulness and the discretion to impose something less than what the SRA mandates, sentencing courts cannot protect juveniles' Eighth Amendment right to be free from unconstitutionally disproportionate punishment. The discretion and consideration that *Houston-Sconiers* requires are necessary to effectuate the substantive rule that certain punishments routinely imposed on adults are unconstitutional as applied to youth.

17

*In re Pers. Restraint of Ali*
No. 95578-6

*Miller* and *Montgomery* compel the conclusion that *Houston-Sconiers* is a new substantive constitutional rule. *Miller* held that mandatory LWOP sentences for juveniles violate the Eighth Amendment because "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." 567 U.S. at 479. In *Montgomery*, the Supreme Court explained that "*Miller* took as its starting premise the principle established in *Roper* and *Graham* that 'children are constitutionally different from adults for purposes of sentencing.'" 136 S. Ct. at 733 (quoting *Miller*, 567 U.S. at 471). The Court concluded that mandatory LWOP for children constitutes cruel and unusual punishment because those differences "result from children's 'diminished culpability and greater prospects for reform,'" and "'the distinctive attributes of youth diminish the penological justifications'" for imposing certain punishments on juveniles. *Id.* (quoting *Miller*, 567 U.S. at 471-72). A life sentence for a child is rarely constitutional, and the sentencing court must exercise discretion and consider youth and its effect on a child's culpability and capacity for change in order to distinguish between "children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption." *Id.* at 734.[5]

---

[5] As the dissent correctly acknowledges, *Miller* contained both a substantive and a procedural component: *Miller* categorically banned LWOP for juveniles whose crimes reflect the transient immaturity of youth and required the exercise of discretion as the mechanism to protect

18

*In re Pers. Restraint of Ali*
No. 95578-6

The same constitutional principles form the foundation of *Houston-Sconiers*. In *Houston-Sconiers*, we recognized that the Eighth Amendment compels courts to treat children differently from adults because the legitimate penological goals fail to justify certain sentences for juveniles in light of the mitigating qualities of youth. 188 Wn.2d at 18. We concluded that the Eighth Amendment requires courts to consider the mitigating qualities of youth at sentencing and to have absolute discretion to impose anything less than the standard adult sentence because children possess diminished culpability, and "certain sentences that are routinely imposed on adults [are] disproportionately too harsh when applied to youth." *Id.* at 18, 19 n.4. *Houston-Sconiers* is substantive because it placed certain adult sentences beyond courts' authority to impose on juveniles who possess such diminished culpability that the adult standard SRA ranges and enhancements would be disproportionate punishment.

The fact that a juvenile *could* receive a sentence within the adult standard range if the sentencing court complies with the dual requirements of *Houston-Sconiers* does not render *Houston-Sconiers* procedural. *Miller* did not foreclose a sentencing court's ability to impose LWOP on all juveniles; it acknowledged that such a punishment may be appropriate for "'the rare juvenile offender whose crime

_____

that substantive rule. Like *Miller*, *Houston-Sconiers*'s procedural component (consideration of youth and discretion to impose sentences below the SRA) is necessary to achieve the substantive protection (punishment proportionate to culpability).

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

reflects irreparable corruption,'" as long as the sentencing court takes the defendant's youth into consideration as the Eighth Amendment requires. *Miller*, 567 U.S. at 479-80 (quoting *Roper*, 543 U.S. at 573). But the sentencing court must engage in this consideration in order to determine whether the juvenile falls within the category of people for whom such a severe and rarely imposed punishment would be permissible. Similarly, under *Houston-Sconiers*, sentencing courts must exercise discretion and consider youth to determine whether the child falls within the category of juveniles for whom standard adult sentences or enhancements are permissible. Like in *Miller*, *Houston-Sconiers* announced a procedural component as a mechanism to protect the substantive rule. The substantive protection of proportionate punishment ceases to exist without the mechanism to determine whether the juvenile belongs in the class of culpability that would allow adult sentences versus the more likely outcome of a sentence that reflects the juvenile's immaturity. This does not transform *Houston-Sconiers*'s substantive rule into a procedural rule.

In *Montgomery*, the Supreme Court held that *Miller* was not procedural because it "did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.'" 136 S. Ct. at 734 (quoting *Miller*, 567 U.S. at 472). In reaching that conclusion, the Court

20

*In re Pers. Restraint of Ali*
No. 95578-6

rejected the State's argument that *Miller* announced a procedural rule because it

mandated a process of considering youth before imposing a particular sentence. *Id.*

at 734. The Court explained that that argument

> conflates a procedural requirement necessary to implement a
> substantive guarantee with a rule that "regulate[s] only the *manner of
> determining* the defendant's culpability." There are instances in which
> a substantive change in the law must be attended by a procedure that
> enables a prisoner to show that he falls within the category of persons
> whom the law may no longer punish. . . . Those procedural
> requirements do not, of course, transform substantive rules into
> procedural ones.

*Id.* at 734-35 (alteration in original) (citations omitted) (quoting *Schriro*, 542 U.S. at

353). The Court concluded that *Miller* announced a substantive rule of constitutional

law because "it rendered life without parole an unconstitutional penalty for 'a class

of defendants because of their status'—that is, juvenile offenders whose crimes

reflect the transient immaturity of youth." *Id.* at 734 (quoting *Penry*, 492 U.S. at

330).

Our holding in *Houston-Sconiers* contains the same substantive and

procedural components as *Miller*. *Houston-Sconiers* followed *Miller* and its

progeny, which centered on the substantive guaranty of the Eighth Amendment:

punishment proportionate to culpability. *Montgomery*, 136 S. Ct. at 732-33

("Protection against disproportionate punishment is the central substantive

guarantee of the Eighth Amendment and goes far beyond the manner of determining

a defendant's sentence."). Like *Miller*, *Houston-Sconiers* includes a procedural

21

*In re Pers. Restraint of Ali*
No. 95578-6

component that specifies a method of achieving its substantive requirement: courts must consider youthfulness with the knowledge that they have absolute discretion to impose any sentence less than the standard adult sentence based on a finding of diminished culpability due to youth.

Again, this does not render *Houston-Sconiers* procedural. Rather than merely establishing a manner of determining the defendants' culpability, *Houston-Sconiers* prohibits certain punishments when imposed without the consideration and discretion that the Eighth Amendment requires. *See Montgomery*, 136 S. Ct. at 735 ("The hearing does not replace but rather gives effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity."). *Houston-Sconiers* prohibits a certain category of punishment (adult standard SRA ranges and enhancements) for a class of juvenile defendants because of their status (juveniles who possess such diminished capacity that those punishments would be unconstitutionally disproportionate). That *Houston-Sconiers* prohibits a broader category of punishments than LWOP or an effective life sentence is inapposite. The difference is one of scope, not of kind.[6]

---

[6] To the extent the dissent argues that *Houston-Sconiers* is not substantive because, as it contends, the reasoning of *Roper*, *Graham*, and *Miller* should not apply to lesser sentences, the dissent's dispute is with the holding of *Houston-Sconiers* itself, not with our conclusion about the substantive nature of that holding. In order for us to reconsider an established rule of law that is otherwise entitled to stare decisis, there must be a clear showing that the rule is incorrect and harmful, or that the legal underpinnings have changed or disappeared altogether. *State v. Pierce*, 195 Wn.2d 230, 240, 455 P.3d 647 (2020) (plurality opinion). No party has argued that *Houston-*

22

Like *Miller*, *Houston-Sconiers* protects juveniles from receiving certain disproportionate sentences. *Houston-Sconiers* rendered certain adult sentences beyond the courts' authority to impose on juveniles who possess such diminished culpability that the standard SRA ranges and sentences would be disproportionate punishment. The Eighth Amendment requires *both* consideration of youthfulness *and* absolute discretion in order to avoid imposing unconstitutionally disproportionate sentences on juveniles. *Houston-Sconiers* announced a new substantive rule that must be applied retroactively.

*Houston-Sconiers* satisfies RCW 10.73.100(6)'s exemption to the time bar: (1) it constitutes a significant change in the law (2) that is material to Ali's sentence and (3) requires retroactive application. Therefore, Ali's PRP is timely under RCW 10.73.100(6), and he may be entitled to relief. In order to obtain relief, he must show that he was actually and substantially prejudiced by the error in sentencing and there are no other adequate remedies available under the circumstances.

B.     Ali Demonstrates Actual and Substantial Prejudice

"We have three available options when reviewing a personal restraint petition: (1) dismiss the petition, (2) transfer the petition to a superior court for a full determination on the merits or a reference hearing, or (3) grant the petition." *In re*

---

*Sconiers* is incorrect and harmful, or that its legal underpinnings have changed, nor does the dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ali*
No. 95578-6

*Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). A petitioner must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the constitutional error in order to obtain relief on collateral review. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004). A reference hearing "is appropriate where the petitioner makes the required prima facie showing, but 'the merits of the contentions cannot be determined solely on the record.'" *Yates*, 177 Wn.2d at 18 (quoting *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983)).

In *Houston-Sconiers*, we explained that the sentencing court should have considered

> mitigating circumstances related to the defendant's youth—including age and its "hallmark features," such as the juvenile's "immaturity, impetuosity, and failure to appreciate risks and consequences." It must also consider factors like the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, and "the way familial and peer pressures may have affected him [or her.]" And it must consider how youth impacted any legal defense, along with any factors suggesting that the child might be successfully rehabilitated.

188 Wn.2d at 23 (alteration in original) (citations omitted) (quoting *Miller*, 567 U.S. at 477); *see also Gilbert*, 193 Wn.2d at 176. We also held that "sentencing courts must have absolute discretion to depart as far as they want below otherwise applicable SRA ranges and/or sentencing enhancements." *Houston-Sconiers*, 188 Wn.2d at 9.

24

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ali*
No. 95578-6

Ali has demonstrated actual and substantial prejudice. His sentencing judge was presented with, and considered, testimony and evidence regarding the mitigating factors of Ali's youthfulness, but she found that she lacked the discretion to impose an exceptional sentence downward based on those mitigating factors. The State requested a high end standard sentence of 390 months. Ali's defense counsel requested an exceptional downward sentence of 10 years (120 months), arguing that Ali was a "young adolescent" at the time of the crimes, and "[v]ery little will be gained by crushing his hope and spirit by sending him away for two lifetimes, which is what the State is asking for." 13 VRP at 1420, 1422. Ali presented letters and testimony from members of his community, who referenced his age, inexperience, and susceptibility to peer pressure, and the fact that "children make mistakes." 13 VRP at 1424-29.

Ali has demonstrated prejudice by a preponderance of the evidence. The judge imposed 312 months, the minimum sentence she had discretion to impose under the SRA. She imposed the lowest available sentence after hearing and considering testimony from family, friends, and community members who knew Ali well and described his inexperience, challenges with peer pressure, and potential for rehabilitation. She made a point to note for the record that she was imposing what she believed to be the lowest available sentence and that Ali's age was the primary reason she imposed the low end sentence.

25

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Ali's case is unlike *Meippen*, where the sentencing judge imposed a high end standard range sentence but said nothing about whether his discretion was limited to the standard range and, instead, emphasized his reasons for imposing a sentence at the high end of the range. 193 Wn.2d at 313. While nothing in the record in *Meippen* suggested that the sentencing judge would have exercised discretion to depart from the SRA in light of the defendant's youth, *id.* at 317, here, the sentencing judge made a point to state that she was ordering the lowest sentence she had discretion to and that she was doing so primarily because of Ali's age.

Ali's sentencing comported with only one of the two constitutional requirements we announced in *Houston-Sconiers*. The sentencing judge considered the mitigating factors of Ali's youth and arguments for an exceptional sentence, but because she did not have the discretion to impose any sentence below the standard SRA range and mandatory enhancements, she sentenced according to the SRA's mandates for adult sentencing. Based on the record, it appears that more likely than not, the judge would have imposed a lower sentence had she understood that the Eighth Amendment requires absolute discretion to impose any sentence below the standard range based on youthful diminished culpability. Since *Houston-Sconiers* applies retroactively, Ali was actually and substantially prejudiced by the sentencing court's (understandable) error.

26

*In re Pers. Restraint of Ali*
No. 95578-6

C.      Ali Is Entitled to Resentencing

A court will only grant relief by a PRP if other remedies available to the petitioner are inadequate under the circumstances. RAP 16.4(d). The State argues that Washington's *Miller*-fix statute, RCW 9.94A.730, is an adequate remedy because it would allow Ali to petition for early release after serving 20 years of his 26 year sentence. We disagree.

The *Miller*-fix statute does not necessarily provide a remedy to a *Houston-Sconiers* violation. RCW 9.94A.730 permits a person convicted of crimes committed when they were under 18 years old to petition for early release after serving 20 years in confinement. After receiving the petition, the Department of Corrections will assess the petitioner's dangerousness and the likelihood that they will engage in future criminal behavior. RCW 9.94A.730(3). The assessment at this stage is not whether the person possessed adult culpability at the time of the crimes but whether they pose a continued danger after 20 years of incarceration. In *Houston-Sconiers*, we emphasized that sentencing courts must consider the mitigating qualities of youth and have absolute discretion "*at the time of sentencing itself*, regardless of what opportunities for discretionary release may occur down the line." 188 Wn.2d at 20 (emphasis added). We acknowledged that "[s]tatutes like RCW 9.94A.730 *may* provide a remedy on collateral review," but we viewed that statute as "just one possible remedy . . . on postconviction review." *Id.* at 23, 22 (emphasis added).

27

*In re Pers. Restraint of Ali*
No. 95578-6

Additionally, *Houston-Sconiers* applies to all juveniles sentenced as adults under the SRA, including those who received far less than life sentences. *Id.* at 21. While RCW 9.94A.730 might provide an adequate remedy for a *Miller* violation, it may be grossly inadequate under the circumstances of a *Houston-Sconiers* violation. As explained above, *Houston-Sconiers* is not limited to life sentences, and, in this case, the *Miller*-fix statute would still require Ali to serve most of the sentence imposed in violation of *Houston-Sconiers* before he could even be considered for early release. Although *Miller* is limited to life sentences and de facto life sentences, *Houston-Sconiers* applies to *any* adult standard sentence imposed on a juvenile, so RCW 9.94A.730 cannot provide an adequate remedy under all circumstances.[7]

A statute that permits early release after 20 years of incarceration based on rehabilitation is not always an adequate remedy when a sentencing court fails to comply with the dual mandates of *Houston-Sconiers*. That case announced a rule requiring something more than *Miller*. It is *imperative* for courts to consider youthfulness at sentencing and for courts to have absolute discretion to impose any sentence below the SRA, including as little as no prison time, for crimes committed

---

[7] *Compare State v. Scott*, 190 Wn.2d 586, 594, 416 P.3d 1182 (2018) (the *Miller*-fix statute provided an adequate remedy for a juvenile sentenced to 900 months because it transformed a de facto life sentence without the possibility of parole to a life sentence with "'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation'") (quoting *Miller*, 567 U.S. at 479), *with Domingo-Cornelio*, slip op. at 14 n.8 (the *Miller*-fix statute would not provide an adequate remedy for a petitioner sentenced to 20 years because it would not allow early release until he served the full sentence imposed in violation of *Houston-Sconiers*).

28

*In re Pers. Restraint of Ali*
No. 95578-6

by children. Thus, under *Houston-Sconiers*, Ali's sentencing range went from 312-390 months to 0-390 months. RCW 9.94A.730 would permit Ali to petition for early release only after serving 240 months of the 312 month sentence imposed in violation of *Houston-Sconiers*. Under these circumstances, other available remedies are inadequate, and Ali is entitled to resentencing.

### III. CONCLUSION

We hold that *Houston-Sconiers* is a significant and material change in the law and that it announced a new substantive constitutional rule that must be applied retroactively upon collateral review. Ali has established actual and substantial prejudice, and his PRP is granted. We remand to superior court for resentencing consistent with *Houston-Sconiers*.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ali*
No. 95578-6

Montoya-Lewis, J

WE CONCUR:

González, J.

Gordon McCloud, J.

Yu, J

Whitener, JPT

Owens, J

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ali*

No. 95578-6

JOHNSON, J. (dissenting)—I disagree with the majority's conclusion that our cases establish a substantive rule of constitutional interpretation requiring retroactive application—though I agree our cases can be read to establish a procedural factor requiring sentencing judges to consider general qualities of youth in considering the discretionary sentencing decision. Our cases, however, also recognize that the sentencing framework under the Sentencing Reform Act of 1981, ch. 9.94A RCW, continues to guide sentencing decisions for juveniles in adult court. In order to maintain principles of consistency and finality in sentencing, I view our cases as establishing additional procedural factors applicable to the sentencing process, and, as being procedural not retroactive. I dissent.

ANALYSIS

This case asks us to decide whether *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), announced a new, substantive rule of constitutional law that applies retroactively. There, we held that "courts must consider mitigating qualities

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable [Sentencing Reform Act of 1981] range and/or sentence enhancements." *Houston-Sconiers*, 188 Wn.2d at 21. The majority reasons that *Houston-Sconiers* must apply retroactively because it established the same kinds of substantive and procedural components as the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and *Miller* applies retroactively. *See Montgomery v. Louisiana*, __ U.S. __, 136 S. Ct. 718, 732, 193 L. Ed. 2d 599 (2016). I disagree.

In my view, *Houston-Sconiers* does not contain a substantive rule because, unlike *Miller*, it does not set a category of punishment altogether beyond the State's power to impose for a class of offenders. To understand the distinction between substantive and procedural rules, we must engage with the Eighth Amendment analysis at the heart of the United States Supreme Court's juvenile sentencing decisions. U.S. CONST. amend. VIII.

The United States Supreme Court has told us that the Eighth Amendment prohibits cruel and unusual punishments, including "'extreme sentences that are grossly disproportionate to the crime.'" *Graham v. Florida*, 560 U.S. 48, 60, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (internal quotations marks omitted) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (controlling opinion of Kennedy, J., concurring in part and concurring in

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

judgment)). *Miller* implicated two lines of United States Supreme Court precedent regarding the proportionality of punishments. 567 U.S. at 470.

The first line of precedent "has adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty." *Miller*, 567 U.S. at 470. These categorical bans create substantive rules of constitutional law: they place certain punishments "altogether beyond the State's power to impose." *Montgomery*, 136 S. Ct. at 729. Substantive rules are retroactive because when the State imposes an unconstitutional sentence, that punishment is always unlawful. When a substantive rule has eliminated the State's power to impose a particular punishment, the "possibility of a valid result does not exist"—even "the use of flawless sentencing procedures [cannot] legitimate a punishment where the Constitution immunizes the defendant from the sentence imposed." *Montgomery*, 136 S. Ct. at 730.

The second line of precedent holds that sentencing laws that make the harshest punishments mandatory pose "too great a risk of disproportionate punishment," so those sentences can be imposed only when a sentencing court is able to "consider the characteristics of a defendant and the details of his offense" to ensure the harshness of the punishment matches the individual offender's culpability for the crime. *Miller*, 567 U.S. at 479, 470. These cases condition the imposition of the law's harshest sentences on a particular procedure—namely, a

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ali*, No. 95578-6
(Johnson, J., dissenting)

sentencing judge's consideration of the offender's individual culpability—"to enhance the accuracy of a . . . sentence by regulating 'the *manner of determining the defendant's culpability.*'" *Montgomery*, 136 S. Ct. at 730 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004)). New procedural rules are generally not retroactive because they merely enhance the accuracy of future sentencing rather than taking a category of punishments out of the State's hands altogether. Accordingly, the announcement of a new procedural rule does not "have the automatic consequence of invalidating a defendant's conviction or sentence." *Montgomery*, 136 S. Ct. at 730. Automatically invalidating sentences imposed under procedures that were understood to be constitutional at the time would "seriously undermine[] the principle of finality which is essential to the operation of our criminal justice system" and deprive criminal law "of much of its deterrent effect." *Teague v. Lane*, 489 U.S. 288, 309, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).

Drawing from both lines of precedent, in my view, *Miller* announced both a new substantive rule and a new procedural requirement. *Miller*'s substantive rule "rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status'—that is, juvenile offenders whose crimes reflect the transient immaturity of youth"—because the distinctive attributes of youth are inconsistent with the penological justifications for imposing life without parole.

4

*In re Pers. Restraint of Ali*, No. 95578-6
(Johnson, J., dissenting)

*Montgomery*, 136 S. Ct. at 734 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989)). In order to enforce that categorical constitutional guaranty, *Miller*'s procedural component requires a sentencing judge to consider a juvenile offender's youth and attendant characteristics "to separate those juveniles who may be sentenced to life without parole from those who may not." *Montgomery*, 136 S. Ct. at 735. These rules work together: "when the Constitution prohibits a particular form of punishment for a class of persons, an affected prisoner receives a procedure through which he can show that he belongs to the protected class." *Montgomery*, 136 S. Ct. at 735. Both rules apply to juvenile sentences imposed after *Miller*.

However, only *Miller*'s substantive rule applies to juvenile sentences imposed before *Miller* was decided. *See Montgomery*, 136 S. Ct. at 736. States must ensure that juveniles whose crimes reflected only transient immaturity will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment, but *Miller* "does not require States to relitigate sentences" so a sentencing judge can consider youthfulness under the procedures *Miller* established "in every case where a juvenile offender received mandatory life without parole." *Montgomery*, 136 S. Ct. at 736. Instead, States can establish their own procedures to remedy such sentences retroactively, including "by permitting juvenile homicide offenders to be considered for parole." *Montgomery*, 136 S. Ct.

5

*In re Pers. Restraint of Ali*, No. 95578-6
(Johnson, J., dissenting)

at 736 (citing WYO. STAT. ANN. § 6-10-301(c) (2013) ("juvenile homicide offenders eligible for parole after 25 years")).[1] Under the Eighth Amendment, the procedural sentencing requirements *Miller* prescribed do not apply retroactively.

*Houston-Sconiers* announced a similar procedural rule that should not apply retroactively. It does not bar any particular punishment for a category of offender but, instead, requires the sentencing court to consider a juvenile offender's youthful attributes with the knowledge it has the discretion to impose a sentence below the standard SRA range because of those attributes. 188 Wn.2d at 21. So long as those proper procedures are followed, *Houston-Sconiers* does not categorically place any sentence beyond the authority of the judge to impose. The majority seemingly recognizes this: "a juvenile *could* receive a sentence within the adult standard range if the sentencing court complies with the dual requirements of *Houston-Sconiers*." Majority at 19. Because *Houston-Sconiers* does not categorically bar any SRA sentence for juvenile offenders, it should not be viewed

---

[1] Two years ago, this court approved Washington's similar "*Miller* fix" statute—RCW 9.94A.730, which allows juvenile offenders sentenced as adults to petition for early release after serving 20 years—without dissent. *State v. Scott*, 190 Wn.2d 586, 597, 416 P.3d 1182 (2018) ("*Montgomery* provides that the Washington *Miller* fix statute's parole provision cures the *Miller* violation in Scott's case."), 603 (Gordon McCloud, J., concurring) (agreeing "that under current Eighth Amendment precedent, RCW 9.94A.730 . . . provides an adequate remedy for the *Miller* violation" and writing separately "to clarify that the adequacy of the statutory remedy available to Scott . . . remains an open question [only] under Washington law").

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

as announcing a substantive rule. *See Montgomery*, 136 S. Ct. at 729 ("Substantive rules . . . set forth categorical constitutional guarantees that place certain . . . punishments altogether beyond the State's power to impose."). Because *Houston-Sconiers* did not announce a substantive rule, it does not apply retroactively.

The majority disagrees, reasoning that "*Miller* and *Montgomery* compel the conclusion that *Houston-Sconiers* is a new substantive constitutional rule" because "[o]ur holding in *Houston-Sconiers* contains the same substantive and procedural components as *Miller*." Majority at 18, 21. I disagree because this conclusion, in my view, blurs the distinction between *Miller*'s substantive and procedural components and consequently it mischaracterizes the nature of *Houston-Sconiers*'s holding in three ways.

First, I disagree with the majority's claim that *Houston-Sconiers* is like *Miller* because both "announced a procedural component as a mechanism to protect the substantive rule." Majority at 20. But unlike *Miller*, the majority's description of *Houston-Sconiers* fails to provide an adequate distinction between the substantive and procedural components. The United States Supreme Court has discussed how *Miller*'s substantive rule is distinct from the procedure protecting the rule: "Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects '"unfortunate yet transient immaturity."'" *Montgomery*, 136

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

S. Ct. at 734 (quoting *Miller*, 567 U.S. at 479 (quoting *Roper v. Simmons*, 543 U.S. 551, 573, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005))). *Miller* announced a substantive rule precisely because it took a category of punishment (life without parole sentences) off the table for a class of offenders (juveniles whose crimes reflect the transient immaturity of youth) *regardless of the procedures followed in imposing that punishment*. In contrast, *Houston-Sconiers* announced a procedural rule because it took a category of punishment (standard SRA sentences and enhancements) off the table for a class of offenders (juveniles) *unless the sentencing judge considers the mitigating qualities of youth at sentencing with the knowledge it has the discretion to impose a lesser sentence because of those qualities*. 188 Wn.2d at 21. What this means is that the sentencing judge retains discretion to determine the appropriate sentence under the SRA and the sentencing range remains the same.

That is the difference I see in these cases. *Miller*'s substantive rule is categorical and distinct from its procedural requirements, while *Houston-Sconiers*'s holding is conditional and can best be described in terms of its procedural requirements.

Second, I disagree with the majority that the "fact that a juvenile *could* receive a sentence within the adult standard range" after *Houston-Sconiers* "does

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

not render *Houston-Sconiers* procedural." Majority at 19. The majority bases this

conclusion on the fact that *Miller* applies retroactively even though "*Miller* did not

foreclose a sentencing court's ability to impose LWOP [life without parole] on all

juveniles; it acknowledged that such a punishment may be appropriate for 'the rare

juvenile offender whose crime reflects irreparable corruption.'" Majority at 19-20

(quoting *Miller*, 567 U.S. at 479-80). But I view that reading of *Miller* as being

rejected by the United States Supreme Court in *Mongtomery*. *Miller* did not

purport to categorically bar life without parole for all juvenile offenders: "*Miller*

drew a line between children whose crimes reflect transient immaturity and those

rare children whose crimes reflect irreparable corruption." *Montgomery*, 136 S. Ct.

at 734. That *Miller*'s substantive rule does not bar life without parole for every

single juvenile offender does not make it equivalent to *Houston-Sconiers*'s

procedural rules.

Finally, I disagree that the difference between *Miller* and *Houston-Sconiers*

"is one of scope, not of kind." Majority at 22. The United States Supreme Court

has reasoned: "Life-without-parole terms . . . 'share some characteristics with

death sentences that are shared by no other sentences.'" *Miller*, 567 U.S. at 474

(quoting *Graham*, 560 U.S. at 69). But *Houston-Sconiers* concerns the "other

sentences" that do not share characteristics of life without parole or the death

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ali*, No. 95578-6
(Johnson, J., dissenting)

penalty. According to *Miller* itself, that difference is one of kind and not merely of scope.

And the difference between the "ultimate penalt[ies] for juveniles" and lesser sentences is crucial. *Miller*, 567 U.S. at 475. After all, the Eighth Amendment "'does not require strict proportionality between crime and sentence,' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *Graham*, 560 U.S. at 60 (internal quotations marks omitted) (quoting *Harmelin*, 501 U.S. at 1001). The analytical justifications that inform the substantive rules announced in *Roper*, *Graham*, and *Miller* should not apply to the lesser sentences, however long in duration.

While I agree *Houston-Sconiers* proscribes new, better methods of determining a juvenile offender's culpability, not every juvenile offender previously sentenced as an adult is suffering from an unconstitutionally cruel and unusual punishment. That conclusion is not supported by the United States Supreme Court's decisions in *Roper*, *Graham*, *Miller*, or *Montgomery* or the Eighth Amendment itself. Accordingly, I dissent.

## CONCLUSION

I would hold that *Houston-Sconiers*'s rules are procedural and apply only prospectively. I would therefore dismiss the personal restraint petition.

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Ali*, No. 95578-6
(Johnson, J., dissenting)

Johnson, J.

Madsen, J.

Stephens, C.J.