# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  55855-6-II |
| Respondent, | |
| v. | |
| JUSTIN WILLIAM HAMMONS, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Justin W. Hammons appeals his sentence imposed following his guilty plea to two counts of first degree rape of a child and one count of third degree assault of a child.  We affirm.

### FACTS

On May 3, 2013, Hammons pleaded guilty to two counts of first degree rape of a child (counts I and II) and one count of third degree assault of a child (count III).  Hammons was 16 years old when he committed count II, and he was 18 years old when he committed counts I and III.  The charges were based on the repeated sexual abuse of Hammons' three younger cousins over the course of several years.  One of the victims was between 6 and 8 years old during the period Hammons vaginally and anally raped her repeatedly.  Another victim was raped over 100 times when he was 6 to 9 years old.  The third victim was raped by forced oral copulation with Hammons repeatedly when she was 8 years old.  As part of the plea agreement, the State intended

to argue for standard range sentences, but Hammons was free to argue for a Special Sex Offender Sentencing Alternative (SSOSA).[1]

At sentencing, Hammons argued for imposition of a SSOSA based on the fact that Hammons was very young at the time of most of the offending behavior and he had an evaluation determining that he was amenable to a SSOSA. Hammons argued, "I think it's a critical factor that the [c]ourt needs to take into account and that most or all of the offending took place between the ages of 13 and 16 when he was a juvenile." Verbatim Rep. of Proc. (VRP) (Aug. 23, 2023) at 13. Hammons argued this youthfulness made him more amenable to a SSOSA and less likely to reoffend after completion of the SSOSA. Hammons further argued a SSOSA was supported by the fact that Hammons was genuinely remorseful for his conduct and his offending was not predatory but rather opportunistic and incestuous. Hammons also directly addressed the court:

> I very much appreciate the opportunity you've given me today to apologize to not only the community and to my family but especially to the victims.
>
> First and foremost, I truly regret what I did and the choices I've made in the past, not because I'm in here or because you think I should, but for the reason that now the victims and I have to live the rest of our lives with what I have done and that is punishment in itself. Again, I am truly very sorry for all my actions, and I take one hundred percent responsibility for everything that occurred.
>
> I know nothing excuses the poor choices I have made in the past, but since then I have learned my lesson and made many right choices in favor of the community to help the less fortunate. Some of the positive choices I have made include volunteering as a Puyallup police explorer as well as at the Eatonville food bank to help serve the needy and homeless. I also volunteered at a retirement home to help others clean and take care of his or her living quarters. I've done all this while working full-time jobs to support myself. Again, I know nothing at all excuses the awful choices I have made, but since then I have learned my lesson and made many positive choices not only to change lives and help others but also better the community.

---

[1] RCW 9.94A.670.

> Finally, I would like to ask you for the opportunity to be released on the SSOSA program with my promise to you that I will never again harm another individual at all and that I will successfully complete the necessary treatment and supervision requirements needed while knowing that if I fail to comply just once with your orders, I will be sentenced to ten or more years in prison. Your Honor, I give my word to you today, after serving over 13 months, and getting back into the loving care of my family and friends, that I would cherish the opportunity to reestablish myself back into the community. I will dedicate myself and do everything possible to prove to you that you made the correct decision by releasing me on the SSOSA program and letting me rejoin the community as a working, positive member of society.

VRP (Aug. 23, 2023) at 20-21.

The State objected to the SSOSA, noting that Hammons had abused the victims for a longer period of time than he had currently served in custody.

The superior court denied Hammons request for a SSOSA. Hammons was sentenced on count I, committed as an adult, to an indeterminate sentence with a minimum term of 171 months and a maximum term of life. Hammons was sentenced to determinate sentences of 171 months on count II, committed as a juvenile, and 12 months on count III, committed as an adult, to run concurrently with his sentence on count I. All of Hammons sentences were high-end standard range sentences under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW.

In May 2021, roughly eight years later, Hammons filed a notice of appeal. On July 12, 2021, a commissioner of this court granted Hammons' motion to file a late notice of appeal.[2] Later, Hammons' appeal was stayed pending several Supreme Court decisions. The stay was lifted on

---

[2] The State suggests Hammons obtained permission to file his late appeal by misrepresenting the record. However, the State did not file a motion to modify the commissioner's ruling allowing Hammons to file the late appeal within 30 days of the ruling. RAP 17.7(a). Accordingly, we do not address the propriety of allowing Hammons' late notice of appeal.

January 13, 2023. After the stay was lifted, the State filed its response, and Hammons filed his reply.

ANALYSIS

In Hammons' opening brief, he made two arguments. First, he argued that the superior court erred by supposedly imposing an indeterminate sentence with a maximum of life on count II, the juvenile count, alleging that the superior court failed to appreciate its discretion to impose a determinate sentence. And, second, he argued that same discretion to impose a determinate sentence should be extended to his adult count I because, although he was not a juvenile for count I, he was a late-adolescent, youthful offender.

In his post-stay reply brief, Hammons conceded these two arguments fail both factually and legally. As to count II, Hammons was factually incorrect; the superior court did actually impose a determinate sentence of 171 months, under RCW 9.94A.507(2), not an indeterminate sentence. Further, as for count I, developing case law foreclosed his argument. Our Supreme Court held in *In re Personal Restraint of Forcha-Williams*, decided after Hammons' opening brief, that superior courts lack the discretion to convert an indeterminate sentence to a determinate one or to reduce the statutory maximum of an indeterminate sentence, even when sentencing juveniles. 200 Wn.2d 581, 597-98, 520 P.3d 939 (2022). Because Hammons was a young adult, not even a juvenile, for count I, the *Forcha-Williams* decision ends any legal basis for Hammons' initial argument. Accordingly, the two arguments raised in Hammons' opening brief necessarily fail.

Despite the failure of his original arguments, Hammons contends, in his reply brief, that his sentence on count II is still unconstitutional based on the sentencing court's failure to comply with *State v. Houston-Sconiers*.[3]

*Houston-Sconiers* established both a substantive rule and a procedural rule. *In re Pers. Restraint of Hinton*, 1 Wn.3d 317, 328-29, 525 P.3d 156 (2023). Under *Houston-Sconiers*' substantive rule, "courts may not impose 'certain adult sentences . . . on juveniles who possess such diminished culpability that the adult standard SRA ranges and enhancements would be disproportionate punishment." *Hinton*, 1 Wn.3d at 328-29 (alteration in original) (quoting *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 239, 474 P.3d 507 (2020)). *Houston-Sconiers*' procedural rule " 'established a mechanism necessary to effectuate that substantive rule: sentencing courts must consider the mitigating qualities of youth and have discretion to impose sentences below what the SRA mandates.' " *Id.* at 329 (quoting *Ali*, 196 Wn.2d at 237). Only *Houston-Sconiers*' substantive rule applies retroactively. *Id.* at 330-31.

Because Hammons' sentencing occurred before *Houston-Sconiers* was decided, only the retroactive aspect of the decision—the substantive rule—applies to his sentence on count II. Here, Hammons received a standard range SRA sentence on count II. However, there is nothing establishing that Hammons possessed such diminished culpability that his sentence was disproportionate to his culpability. *See State v. Barry*, 183 Wn.2d 297, 317, 352 P.3d 161 (2015) ("The party presenting an issue for review has the burden of providing an adequate record to establish error."). In fact, Hammons specifically requested a SSOSA based in part on his youth

---

[3] 188 Wn.2d 1, 391 P.3d 409 (2017).

No. 55855-6-II

during most of the criminal behavior, and the superior court rejected this argument. Further, the sentence resulted from his agreement to a plea deal that reduced multiple years of abuse against three separate victims to merely three convictions, which undermines any argument that Hammons sentence on count II is disproportionate to his culpability.

Accordingly, Hammons cannot show that his sentence on count II violates *Houston-Sconiers'* substantive rule. Because Hammons cannot make this showing, there is no error. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

VELJACIC, P.J.

CHE, J.