IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81447-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| F.H.B., | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — After declining to adult court, F.H.B. pleaded guilty to one count of first degree assault with a firearm enhancement. The trial court imposed an exceptional sentence of 120 months rather than F.H.B.'s requested sentence of 115 months. F.H.B contends the sentencing court failed to meaningfully consider the mitigating factors of youth. Because the court analyzed sentencing materials and made findings of fact confirming it meaningfully considered the Miller[1] youthfulness factors, his challenge fails.

F.H.B also argues the court exceeded its authority by speculating about the effect of good time on his sentence. Because the court discussed good time for the express and limited purpose of determining whether F.H.B. would be eligible for rehabilitation programs, the court did not exceed its authority.

Therefore, we affirm.

---

[1] Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

FACTS

On the evening of February 23, 2019, three people were sitting in a BMW parked outside an American Legion hall while waiting to attend a quinceañera. A Honda backed into an adjacent parking space. The BMW's passengers recognized 15-year-old Varrio Locos gang member F.H.B. in the Honda's passenger seat. F.H.B. fired four shots at the BMW, which were "clearly intended to hit [the] backseat passenger," S.E.[2] S.E. and another passenger were struck but survived.

In the month before the shooting, F.H.B. had called S.E. a "rat," publicly pressuring him not to testify in an upcoming murder trial of another Varrio Locos member. F.H.B. acted "in an aggressive, violent, premeditated, or willful manner" when he tried to kill S.E and did so without pressure from Varrio Locos members or others.[3] He showed "no regard for the safety of other bystanders."[4]

Also in the month before the shooting, F.H.B. had been struggling personally because his mother and stepfather had just separated. F.H.B. had a close relationship with them and had been working at a restaurant for several years to help with rent. Their separation "caused a lot of anger in" F.H.B.[5] and made him feel "betrayed" by his stepfather.[6]

---

[2] Clerk's Papers (CP) at 5.

[3] CP at 96.

[4] Ex. 9, at 4.

[5] Ex. 8, at 6.

[6] CP at 97.

F.H.B. joined the gang in eighth grade after a close friend, who had been a Varrio Locos member, was murdered. Being a gang member gave F.H.B. a sense of belonging. In March of 2018, within six months of joining, F.H.B. brought a gun to school and was expelled. He received a deferred disposition for unlawful possession of a firearm, successfully participated in community support programs, performed well in online school, and earned early dismissal of the deferred disposition in November of 2018. He also continued his gang affiliation, successfully hiding it from his juvenile probation counselor, community mentors, and his mother. F.H.B. attempted to kill S.E. two months after completing his juvenile court requirements.

After being identified by the shooting victims and arrested after a high speed chase, F.H.B. was charged in juvenile court with first degree attempted murder with a firearm, first degree assault with a firearm, witness tampering, second degree unlawful possession of a firearm, and attempting to elude a pursuing police vehicle. If tried as an adult, F.H.B. could face a standard-range sentence of 408 to 504 months.

F.H.B. agreed to plead guilty to only first degree assault with a firearm and to waive juvenile jurisdiction and decline to adult court because he could be eligible for rehabilitative programs and services until age 25 rather than age 21. The standard-range sentence for first degree assault with a firearm enhancement would be 153 to 183 months.

The parties agreed an exceptional sentence was appropriate because it "takes into account [F.H.B.'s] youthfulness at the time of the crime."[7] The State promised to

---

[7] CP at 42.

recommend a 120 month sentence—60 months for the assault and 60 months for the firearm enhancement—and F.H.B. promised to request a sentence of at least 115 months. F.H.B. requested a 115-month sentence for the "primary purpose" of "keep[ing] him out of any adult facilities" and the additional rehabilitative benefit of letting him serve part of his sentence in a group home.[8]  To be eligible for a group home, F.H.B. would need to have his sentence reduced by good time.

The court accepted F.H.B.'s waiver of juvenile jurisdiction and entered findings of fact to support its decision. During sentencing presentations, the court asked the parties whether they objected to it "considering good time . . . given that the reason I'm doing that is to figure out the best way to engage [F.H.B.] in rehabilitative programs at juvenile or JRA."[9]  F.H.B. did not object. After hearing argument, the court adopted the State's recommended 120-month term of confinement and entered findings of fact to support this exceptional sentence.

F.H.B. appeals.

ANALYSIS

I. Consideration of the Mitigating Circumstances of Youth

F.H.B. contends the trial court failed to "meaningfully consider" the mitigating circumstances of his youth because it sentenced him to 120 rather than 115 months' incarceration. Because he is contradicted by the record, his argument is not persuasive.

---

[8] CP at 49-50.

[9] Report of Proceedings (RP) (Apr. 30, 2020) at 33.

The Eighth Amendment "place[s] certain adult sentences beyond courts' authority to impose on juveniles who possess such diminished culpability that the adult standard SRA [Sentencing Reform Act of 1984] ranges and enhancements would be disproportionate punishment."[10] When sentencing a juvenile in adult court, a court must consider the Miller youthfulness factors: the defendant's age, immaturity, impetuosity, failure to appreciate risks and consequences, family and social circumstances, conduct when committing the crime, social pressures, and prospects for rehabilitation.[11] The court has "absolute discretion to impose anything less than the standard adult sentence" based upon its consideration of the defendant's youthfulness.[12]

The record here shows the trial court meaningfully considered the mitigating circumstances of youth when it determined an exceptional sentence was justified by F.H.B.'s youthfulness. F.H.B. and the State stipulated "that justice is best served" by imposing an exceptional sentence.[13] The court accepted the stipulation, noting F.H.B. was 15 at the time of his crime, and concluding mitigating circumstances justified an exceptional sentence. The only mitigating circumstance discussed was F.H.B.'s youthful character.

---

[10] Matter of Ali, 196 Wn.2d 220, 242, 474 P.3d 507 (2020), cert. denied sub nom. Washington v. Ali, 141 S. Ct. 1754, 209 L. Ed. 2d 514 (2021).

[11] State v. Houston-Sconiers, 188 Wn.2d 1, 23, 391 P.3d 409 (2017) (citing Miller, 132 S. Ct. at 2468).

[12] Matter of Domingo-Cornelio, 196 Wn.2d 255, 259, 474 P.3d 524 (2020) (citing id. at 19), cert. denied sub nom. Washington v. Domingo-Cornelio, 141 S. Ct. 1753, 209 L. Ed. 2d 515 (2021).

[13] CP at 21.

The court expressly considered evidence from the decline hearing to conclude an exceptional sentence was justified. The evidence included reports on F.H.B from a forensic psychologist and his juvenile probation counselor and the court's findings of fact from the decline hearing. F.H.B. stipulated to the accuracy of those sources.

The psychologist discussed F.H.B.'s immaturity, impetuosity, and inability to appreciate risks and consequences. He stated that F.H.B. "is likely to be impulsive and have problems with anger."[14] He explained F.H.B. "has carried very little sense of a future" and "tends to think about the immediate situation, driven of course, by emotion," which "deprives him (and many adolescents) of the ability to realistically anticipate and weigh the long-term consequences of prospective actions, to consider the scale and proportionality of likely outcomes."[15] The psychologist also noted F.H.B.'s family history and "relative immaturity . . . left him vulnerable to the lure and promise of gang cultures prevalent in" his community.[16] The court found F.H.B. committed his crime without any influence from his gang or any other people.

The court's oral ruling noted F.H.B.'s strong potential for rehabilitation and touched upon many of the Miller factors required when sentencing a juvenile in adult court:

> When you fired a gun into that car because there was someone who was a witness who was part of this [judicial] system, who was doing not what he wanted to do but what he was required to do and would have had to do one way or another, you were blowing a hole in the very system

---

[14] Ex. 8, at 10.

[15] Ex. 8, at 12.

[16] Ex. 8, at 12.

that was designed to protect you and [the Varrio Locos gang member on trial for murder]. And I hope that makes some sort of sense to you.

I also want you to know that as I sit here today, I see you as somebody who has the potential to do the things the women in your life who got up here and talked believe that you can do. Mostly because you've done it. You've gone to school. You had a job. You love your family. They love you. You have all the building blocks in place to succeed. You don't need the gang that you got involved in in order to be safe, be protected, and have success in your life. And that's because you are smart enough, you've got it together enough, and you're enough of a leader to do this on your own. And I don't say that to every kid who sits here in front of me, but I say it based on what I read about you, what I understand about you . . . [a]nd what I understand about the people who are speaking on your behalf.[17]

On this record, the court meaningfully considered the "hallmark features" of F.H.B.'s youth and related circumstances.

Because F.H.B.'s youth diminished his culpability, the Eighth Amendment gave the court absolute discretion to fashion a proportionate sentence. The State expressed serious concerns about the risks to public safety from imposing a shorter sentence that could let F.H.B. enter a less secure facility and have unsupervised time in the community. F.H.B. had previously been in a rehabilitative setting and secretly continued his role in Varrio Locos. The court had the discretion to prioritize public safety over rehabilitation. F.H.B. cites no authority that the Eighth Amendment requires prioritizing opportunities for rehabilitation or agreeing to a 115-month rather than 120-month exceptional sentence below the standard range. Because the court meaningfully considered the mitigating effects of F.H.B.'s youth and F.H.B. fails to show the court's chosen sentence was illegal, his argument is unavailing.

---

[17] RP (Apr. 30, 2020) at 56-58.

7

## II. Improper Consideration of Good Time

F.H.B. argues resentencing is required because the trial court improperly considered the effect of good time when determining the length of his sentence.

The parties agree a trial court errs when it "'impose[s] a sentence outside the presumptive range based on an entirely speculative prediction of the likely behavior of an offender while in confinement.'"[18] "If sentence length is fixed based on improper consideration of potential early release, then it rests on an untenable basis."[19] But, in State v. Sledge, the Supreme Court explained a court sentencing a juvenile could consider the possibility of good time when determining the length of a sentence if there are "facts documenting a need for confinement for a specific treatment program requiring a set duration to successfully complete."[20]

The State's and F.H.B.'s recommended sentences had similar lengths, but they disputed whether F.H.B. should be eligible to spend part of his sentence in a group home. Being in a group home would be rehabilitative and, as defense counsel explained, "he would have access to some community-based programs."[21] F.H.B. argues Sledge requires the sentencing court to identify a specific treatment program

---

[18] State v. Sledge, 133 Wn.2d 828, 845, 947 P.2d 1199 (1997) (quoting State v. Wakefield, 130 Wn.2d 464, 478, 925 P.2d 183 (1996)); Appellant's Br. at 20; Resp't's Br. at 19.

[19] State v. Bourgeois, 72 Wn. App. 650, 661 n.7, 866 P.2d 43 (1994) (citing State v. Ross, 71 Wn. App. 556, 573 n.9, 861 P.2d 473 (1993)).

[20] 133 Wn.2d 828, 845, 947 P.2d 1199 (1997).

[21] RP (Apr. 30, 2020) at 50. Defense counsel and F.H.B.'s probation officer also mentioned several rehabilitative benefits from a group home, including access to good role models, going to community college, being able to get a job, and having more opportunities to reintegrate into the community. Id.

affected by good time. But when, as here, multiple programs are implicated by a single sentencing decision, it would be inefficient and redundant for the court to parse each rehabilitative program.

The court inquired about the effect of good time on the proposed sentences from F.H.B. and the State to understand how good time affected F.H.B.'s eligibility for entry into a group home:

> COURT:   [T]here is case law out there that limits when a court can inquire about good time when sentencing someone . . . but there's also case law that says particularly where, in juvenile situations, the question of rehabilitation and treatment is at issue[,] that the court can inquire, can consider how good time will affect rehabilitative programs in the juvenile system. . . . Do either of you [F.H.B. or the State] have an objection to me considering good time in the context of trying to figure out a sentence that works, given the divergent [sentencing] requests from the parties --
>
> DEFENSE:   No.
>
> COURT:   -- given that the reason I'm doing that is to figure out the best way to engage [F.H.B.] in rehabilitative programs at juvenile or JRA?
>
> STATE:   State has no objection.
>
> DEFENSE:   Defense has no objection.[22]

F.H.B.'s eligibility for entry into a group home depended on him being set for release prior to his 25th birthday. To become eligible for release to a group home at F.H.B.'s proposed 115-month term of incarceration, he would need to earn enough good time to reduce his term of incarceration by at least four months. Thus, the specific duration of F.H.B.'s sentence, including good time, affected his ability to access

---

[22] RP (Apr. 30, 2020) at 32-33.

rehabilitative programs. The court did not exceed its authority by considering the possible effects of good time credit on F.H.B.'s term of incarceration when sentencing him.[23]

III. Whether F.H.B.'s Sentence is Contrary to Legislative Intent

F.H.B. appears to argue resentencing is required because the trial court opted for a more punitive rather than rehabilitative sentence. Citing minimal or inapposite authority, F.H.B. asserts his sentence "was contrary to the legislature's intent and to the developing body of case law prioritizing rehabilitation for juveniles."[24] He contends the court "failed to sufficiently consider how imposing a sentence without the opportunity for community-based programming would negatively impact [F.H.B.]'s development and chances of rehabilitation."[25] But he cites no authority for this argument. Although he relies upon the Juvenile Justice Act (JJA)[26] to argue the rehabilitative aspects of incarceration should be prioritized, he fails to explain why the JJA controlled sentencing

---

[23] Even if considering good time were erroneous, F.H.B. invited this error. The invited error doctrine bars a defendant from appealing on the basis of an error it "set up" at trial. State v. Schierman, 192 Wn.2d 577, 618, 438 P.3d 1063 (2018) (quoting City of Seattle v. Patu, 147 Wn.2d 717, 720, 58 P.3d 273 (2002)). The doctrine applies to alleged constitutional errors. City of Seattle v. Patu, 108 Wn. App. 364, 374, 30 P.3d 522 (2001) (citing State v. Gentry, 125 Wn.2d 570, 645, 888 P.2d 1105 (1995)). F.H.B. requested the 115-month sentence and argued it was appropriate because he would be eligible for entry into a group home. CP at 49-50. But because he would be eligible for a group home only with good time credits, his sentencing request required the trial court's consideration of good time to evaluate his proposed sentence.

[24] Appellant's Br. at 28.

[25] Appellant's Br. at 33.

[26] Ch. 13.40 RCW.

after F.H.B. declined to adult court.  Because F.H.B. fails to cite any apt authority, his argument is not compelling.

Therefore, we affirm.

_____

WE CONCUR:

_____     _____
                                     Mann, C.J.