**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57395-4-II |
| Respondent, | |
| v. | |
| TREVEON DARNELL REED, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Treveon D. Reed is appealing the sentence imposed following his resentencing on his conviction for second degree murder. Reed argues that the superior court erred by emphasizing retribution over mitigating factors. Reed also argues that the improper community custody supervision fees must be stricken from his judgment and sentence. We affirm Reed's sentence but remand for the superior court to strike any legal financial obligations (LFOs) that are not authorized by current statutes.

FACTS

On May 29, 2015, Reed was charged with second degree murder with a firearm enhancement after he shot and killed Jatarius Tolbert. Reed was 17 years old at the time of the shooting. In February 2016, Reed pleaded guilty as charged. Reed was sentenced to a standard range sentence of 140 months with a 60 month firearm sentencing enhancement for a total term of 200 months of confinement.

In February 2022, Reed filed a CrR 7.8 motion seeking resentencing based on *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017). Reed's resentencing hearing took place on September 29, 2022. At the beginning of Reed's resentencing, the superior court noted that it remembered Reed's case well because it was one of three cases in a two week period where juveniles had killed someone in a shooting. The State argued that despite Reed's youth at the time of the offense, the original sentence was appropriate and proportional. The State went through multiple factors related to Reed's youth, including his background, his gang involvement, and the facts surrounding the crime. The State also argued there was little evidence of rehabilitation since Reed's original sentencing because Reed continued to be infracted for assaultive behavior in prison.

Reed argued that his original sentence was based on a policy of attempting to deter gang violence and the gravity of the case rather than being individualized and considering any mitigating factors related to Reed's youth. Reed also went through multiple factors related to his youth, arguing that his background, gang involvement, and youth all warranted mitigation. Reed asserted that he had "significant involvement in programming" in prison, he completed his GED, and he had almost completed an associate's degree. Verbatim Rep. of Proc. (VRP) at 16. Reed further argued that his infractions resulted from a pattern of acting defensively and did not demonstrate a lack of rehabilitation.

The superior court questioned whether Reed had actually taken any responsibility for his actions:

> I understand that there are psychological principals that make it impossible sometimes for people to accept the behavior that they actually were engaged in. That's called blocking and I understand that that happens. But that's not what's

> happening here. I think that this is simply a failure to take responsibility, in reality, despite the fact that of course he's already pled guilty to the crime.

VRP at 22. Reed responded that he did take responsibility by pleading guilty rather than going to trial. Reed asked that the superior court impose 120 months of confinement, run the firearm sentencing enhancement concurrently so that Reed could be out of prison before his daughter turned 11 years old, and waive all non-mandatory costs.

Reed also addressed the superior court directly. Reed claimed that he never intended to hurt anyone on the day of the shooting and that he was afraid for his life and the life of his friends. He stated that what he really wanted was the chance to be a father to his children. Reed also explained that he was trying to better himself, but he was also scared being in prison and needed to stand up for himself. Reed wanted to get out of prison, have a fresh start, and start a business. He also wanted to help keep his younger brother out of gangs. The superior court went through several of the factors of youth raised by the parties and explained how those factors did not provide strong support for mitigating Reed's culpability or reducing his sentence. The superior court stated that it would reimpose the same sentence as it imposed at the original sentencing hearing.

The superior court sentenced Reed to a standard range sentence of 200 months of confinement. The judgment and sentence contained boilerplate language ordering that Reed pay supervision fees as a condition of community custody. The superior court also ordered Reed to pay the $500 crime victim penalty assessment and $5,750 in restitution. Reed appeals.

ANALYSIS

A.    RESENTENCING

Reed argues that the superior court erred at his resentencing hearing because the superior court favored retributive factors over the mitigating factors of youth. We disagree.

Generally, a sentence within the standard sentencing range may not be appealed. RCW 9.94A.585(1). However, "this rule does not preclude a defendant from challenging on appeal the underlying legal determinations by which the sentencing court reaches its decision." *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017).

In *Houston-Sconiers*, our supreme court "established the substantive rule that courts may not impose 'certain adult sentences . . . on juveniles who possess such diminished culpability that the adult standard [Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW] ranges and enhancements would be disproportionate punishment.'" *In re Pers. Restraint of Hinton*, 1 Wn.3d 317, 328-29, 525 P.3d 156 (2023) (first alteration in original) (quoting *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 239, 474 P.3d 507 (2020), *cert. denied*, 141 S. Ct. 1754 (2021)). "*Houston-Sconiers* 'also established a mechanism necessary to effectuate that substantive rule: sentencing courts must consider the mitigating qualities of youth and have discretion to impose sentences below what the SRA mandates.'" *Id*. at 329 (quoting *Ali*, 196 Wn.2d at 237).

Neither *Houston-Sconiers* nor the cases applying it dictate how much weight must be given to mitigating factors of youth when sentencing a juvenile under the SRA. Further, although Reed cites to case law addressing sentencing procedures outside the SRA, which is discussed below, he identifies no case law requiring that superior courts give any particular emphasis or weight to the mitigating qualities of youth. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372

P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Instead of relying on *Houston-Sconiers* and the cases following it, Reed relies on *Miller v. Alabama*[1] and cases addressing resentencing under the *Miller*-fix statutes,[2] specifically *State v. Haag*[3] to argue that the superior court was required to place more emphasis on mitigating factors rather than retributive factors. However, case law regarding the *Miller*-fix statutes is inapplicable to resentencings under *Houston-Sconiers*.

Admittedly, both lines of cases address sentencing juveniles. However, the *Miller*-fix statutes create very specific statutory requirements to address juveniles who were sentenced to mandatory life without parole under chapter 10.95 RCW. *Haag*, 198 Wn.2d at 322; *State v. Ramos*, 187 Wn.2d 420, 442-43, 387 P.3d 650, *cert. denied*, 583 U.S. 995 (2017). Therefore, a *Miller*-fix resentencing "is not an ordinary sentencing proceeding." *Ramos*, 187 Wn.2d at 443. Reed has not identified any authority that the specific procedural requirements of *Miller*-fix resentencings apply to SRA sentencings.

Here, the superior court resentenced Reed under the SRA and complied with the procedural requirements of *Houston-Sconiers*. Reed has not identified any legal error that occurred at sentencing. Therefore, Reed's standard range sentence is not appealable.

---

[1] 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

[2] RCW 10.95.030(2), RCW 10.95.035.

[3] 198 Wn.2d 309, 495 P.3d 241 (2021).

No. 57395-4-II

B.      LFOs

Reed also argues that the superior court erred by imposing community custody supervision fees. The State concedes that remand to address the community custody supervision fee is appropriate. We accept the State's concession.

As of July 1, 2022, community custody supervision fees are no longer authorized by the legislature. LAWS OF 2022, ch. 29 § 8; RCW 9.94A.703(2). Further, as of July 1, 2023, the crime victim penalty assessment is no longer authorized for indigent defendants. LAWS OF 2023, ch. 449 § 1; RCW 7.68.035(4). Because the LFOs imposed by the superior court are no longer authorized by the legislature, we remand to the superior court to strike LFOs that are no longer authorized by the legislature.

We affirm Reed's sentence but remand for the superior court to strike any LFOs that are not authorized by current statutes.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, A.C.J.

Che, J.

6