# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

July 11, 2023

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57572-8-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| DOMINIQUE JAMAAL STEWART, | |
| Appellant. | |

MAXA, J. – Dominique Stewart appeals the trial court's order resentencing him to 87 months in prison plus two 60-month firearm sentencing enhancements for convictions of second degree manslaughter and two counts of first degree robbery.

Stewart committed the offenses when he was 17 years old. The trial court originally sentenced Stewart to 92 months plus the two 60-month firearm sentencing enhancements. Stewart was resentenced pursuant to *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017).

Stewart argues that even though the trial court considered the mitigating evidence regarding his youth that he presented and analyzed the factors outlined in *Houston-Sconiers*, the court abused its discretion when at resentencing it reduced his sentence by only five months rather than imposing an exceptional downward sentence. We hold that because the trial court

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57572-8-II

imposed a sentence within the standard range and the court did not fail to meaningfully consider his youth, Stewart cannot appeal the sentence. Accordingly, we affirm Stewart's sentence.

FACTS

*Background*

In October 2010, Stewart was 17 years old when he took part in two robberies. The first robbery involved Stewart stealing an iPhone while carrying a gun. The second robbery, which took place a few days later, involved stealing cannabis. Stewart's accomplice shot and killed a man during the second robbery. The shooting was unexpected, but Stewart had planned both robberies.

Stewart plead guilty to second degree manslaughter and two counts of first degree robbery. The agreement included a sentencing range of 87 to 116 months for each felony to run concurrently and 60 months each for two firearm sentencing enhancements to run consecutively to each other and to the standard range sentences. The trial court sentenced Stewart to 92 months plus 120 months for the firearm sentencing enhancements.

In February 2022, Stewart filed a personal restraint petition to be resentenced pursuant to *Houston-Sconiers*, which this court granted.

*Mitigating Qualities of Youth*

At the resentencing hearing, Stewart submitted memoranda, statements, and testimonies in order to outline the effect the mitigating circumstances of youth had on him at the time of the crime.

2

No. 57572-8-II

Stewart was raised primarily by his mother, having no contact with his biological father after he was about two or three years old. Stewart had a good relationship with his stepfather, although they did not live together. However, his stepfather was strict and used physical punishment.

At a young age, Stewart was diagnosed with opposition defiant disorder and attention deficit hyperactive disorder. Stewart was prescribed medication, but he refused to take the medication as he grew older. In order to find acceptance, he gravitated towards gang life, as young as the fourth grade. He committed crimes of theft as a younger member, and he committed more serious crimes as he got older. As a result, he had a significant juvenile criminal history and he witnessed regular violence.

At about 15 or 16 years old, Stewart was sent to a juvenile detention center for about a year, where he was diagnosed with post-traumatic stress disorder. Upon release, he applied for numerous jobs but was rejected each time. Then his girlfriend at the time lost their child, which led him to becoming depressed. Stewart turned to using cannabis to help with his anxiety.

Because Stewart could not get a job and did not have a steady source of income, he committed the crimes that led to the convictions at issue in this case.

While incarcerated, Stewart struggled to manage his mental health issues and only in the past year had he found a pattern of medication that is helpful. Yet he still had participated in many rehabilitation activities. And he rejected gang association in 2015. Stewart earned his associates degree in business management and currently has a GPA of 3.59 at Walla Walla Community College. He also joined a bible study, gained employment skills from various

3

No. 57572-8-II

programs, and helped develop The Redemption Project, which aims to help inmates gain the skills to succeed in the community upon release from prison.

But Stewart also accumulated 73 infractions while incarcerated. Although many of these infractions were minor and stemmed from his mental health disorders, Stewart received five serious infractions that were of specific concern to the trial court – two positive urinalysis tests for methamphetamine and THC in 2018, refusing a urinalysis test in 2019, fighting in 2019 and 2020, and threatening violence in 2021.

In 2022, Dr. Kristin Carlson conducted a forensic psychological report in order to evaluate Stewart's mental state at the time he committed his crimes and to identify mitigating factors that should be considered during resentencing. Dr. Carlson detailed Stewart's childhood experiences, his time incarcerated, and research on juvenile brain development. She also diagnosed him with major depressive disorder, which now was in remission due to psychotropic medication.

In addition, Dr. Carlson's report noted that the violence risk assessment guide placed Stewart in a high risk range for future violence and the historical clinical risk scored Stewart as being in a moderate risk range for future violence and a low risk range for imminent violence.

*Resentencing Decision*

At the resentencing hearing, the trial court made it clear that it would prepare and enter "very detailed findings" in order to give the materials "the weight they deserve." Rep. of Proc. at 5. The court then entered lengthy findings of fact and conclusions of law. The findings of fact addressed each mitigation factor in detail, including (1) Stewart's immaturity, impetuosity and failure to appreciate risks and consequences; (2) the nature of Stewart's environment and family

4

No. 57572-8-II

circumstances; (3) Stewart's participation in the crimes; (4) familial and peer pressures; (5) whether youth impacted his legal defense; and (6) his rehabilitation efforts.

After giving "careful and meaningful consideration of Mr. Stewart's youth as a mitigating factor," the trial court imposed a sentence of 87 months – the bottom of the standard range – on the second degree manslaughter count and each robbery count to run concurrently with one another. And the court also imposed the two 60-month firearm sentencing enhancements to run consecutively to each other and to the standard range sentences. The court recognized that it had "the discretion to impose a sentence below the standard range," but deemed such a sentence to be inappropriate because of Stewart's recent history and use of violence while incarcerated. Clerk's Papers (CP) at 219.

Stewart appeals his sentence.

## ANALYSIS

### A.    SENTENCING UNDER *HOUSTON-SCONIERS*

When sentencing juvenile defendants, a trial court must have full discretion to consider mitigating circumstances associated with youth and to depart from the applicable sentencing guidelines and any mandatory sentence enhancements. *Houston-Sconiers*, 188 Wn.2d at 21. When the court considers the mitigating qualities of youth, it "retain[s] absolute discretion" to impose a "proportionate [sentence] for a particular juvenile." *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 232, 474 P.3d 507 (2020). The trial court must receive and consider mitigation evidence and be "fully aware of its authority to impose an exceptional sentence below the standard range. *State v. Ramos*, 187 Wn.2d 420, 453, 387 P.3d 650 (2017).

No. 57572-8-II

The Supreme Court in *Houston-Sconiers* held that factors that must be considered regarding a defendant's youth include (1) the juvenile's age, immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the nature of the juvenile's family circumstances and surrounding environments; (3) the juvenile's participation in the crime and the effect of any family or peer pressures; (4) how the juvenile's youth impacted the legal defense; and (5) the juvenile's chances of being successfully rehabilitated. 188 Wn.2d at 23.

In addition, the trial court "must *meaningfully consider* how juveniles are different from adults, [and] how those differences apply to the facts of the case." *Ramos*, 187 Wn.2d at 434-35 (emphasis added). This means a court "must do far more than simply recite the differences between juveniles and adults and make conclusory statements that the offender has not shown an exceptional downward sentence is justified." *Id.* at 443.

However, trial courts are not required to impose a sentence outside of the standard range if the trial court considers the qualities of youth at sentencing and determines that a standard range sentence is appropriate. *Ali*, 196 Wn.2d at 239-40. "[N]othing in *Houston-Sconiers* prevents judges from imposing standard adult range sentences on juveniles." *In re Pers. Restraint of Forcha-Williams*, 200 Wn.2d 581, 605, 520 P.3d 939 (2022).

A juvenile defendant has the burden of proving that mitigating circumstances warrant an exceptional sentence below the standard range. *State v. Gregg*, 196 Wn.2d 473, 486, 474 P.3d 539 (2020).

B.      APPLICATION OF RCW 9.94A.585(1)

The State argues that Stewart's appeal is barred under the general rule that standard range sentences cannot be appealed. We agree.

6

No. 57572-8-II

The general rule is that a sentence within the standard sentence range for an offense may not be appealed. RCW 9.94A.585(1); *State v. Glant*, 13 Wn. App. 2d 356, 376, 465 P.3d 382 (2020). "The rationale is that a trial court that imposes a sentence within the range set by the legislature cannot abuse its discretion as to the length of the sentence as a matter of law." *Glant*, 13 Wn. App. 2d at 376. However, this rule does not apply to the procedure by which a standard range sentence is imposed. *In re Pers. Restraint of Marshall*, 10 Wn. App. 2d 626, 635, 455 P.3d 1163 (2019). Therefore, a party may " 'challenge the underlying legal conclusions and determinations by which a court comes to apply a particular sentencing provision.' " *State v. Delbosque*, 195 Wn.2d 106, 126, 456 P.3d 806 (2020) (quoting *State v. Williams*, 149 Wn.2d 143, 147, 65 P.3d 1214 (2003)).

Whether or not the trial court meaningfully considered the mitigating characteristics of youth as *Houston-Sconiers* requires is a matter of procedure, and therefore a defendant may appeal regarding that issue. However, there is no question that the trial court here addressed in great detail the *Houston-Sconiers* factors. Stewart does not argue that the trial court did not meaningfully consider his youth.

Instead, Stewart argues that the trial court erred in not imposing a sentence below the standard range based on its consideration of his youthful characteristics. But when a defendant requests an exceptional sentence, our review is limited to circumstances where the trial court (1) categorically refuses to award an exceptional sentence downward under any circumstances, (2) relies on an improper basis for denying an exceptional downward sentence, or (3) fails to recognize its discretion to impose an exceptional sentence downward. *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017).

7

No. 57572-8-II

However, when a trial court has exercised its discretion, the defendant cannot appeal the resulting sentence. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

> [I]t is the refusal to exercise discretion or the impermissible basis for the refusal that is appealable, not the substance of the decision about the length of the sentence. Conversely, a trial court that has considered the facts and has concluded that there is no basis for an exceptional sentence has exercised its discretion, and the defendant may not appeal that ruling.

*Id.*

Here, there is no question that the trial court knew that it had the discretion to impose an exceptional sentence downward. The court's conclusions of law carefully discussed *Houston-Sconiers* and other cases requiring a meaningful consideration of the defendant's youthful characteristics. The court stated, "The requirement of 'meaningful consideration' of youth . . . sets this court's guideposts in determining an appropriate sentence in the case now before the court." CP at 219.

And the trial court did not refuse to exercise that discretion. The trial court reviewed the trial transcript of Stewart's original sentencing hearing, the circumstances of the crime, memoranda provided for the resentencing, an expert psychological evaluation and risk assessment report, victim impact statements, letters of support, and all statements and testimony from the hearing itself. From this evidence, the court explicitly and carefully considered each mitigating factor as required by *Houston-Sconiers*. Ultimately, the court determined that although it had the discretion to impose a sentence below the standard range, such a sentence was not appropriate under the facts of the case.

Accordingly, we conclude that Stewart cannot appeal his standard range sentence.

8

No. 57572-8-II

CONCLUSION

We affirm Stewart's sentence.

_____
MAXA, J.

We concur:

_____
GLASGOW, C.J.

_____
CRUSER, J.

9