# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59360-2-II |
| Respondent, | |
| v. | |
| JACEN DEAN FILLO, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Jacen D. Fillo appeals from his guilty plea to one count of first degree child molestation, which Fillo committed against his younger foster sister when he was between 11 and 15 years old. Fillo was 19 years old at sentencing and was expecting a daughter to be born three months after his sentencing. The trial court imposed a sentence at the top of the standard sentencing range.

Fillo argues that 1) the trial court failed to meaningfully consider Fillo's youth at sentencing, 2) Fillo received ineffective assistance of counsel because defense counsel failed to advocate for a mitigated sentence based on youth, 3) the prosecutor breached the plea agreement, 4) the appearance of fairness doctrine requires resentencing before a different judge, 5) conditions in the judgment and sentence unconstitutionally interfere with Fillo's right to parent, and 6) we should remand for the trial court to evaluate whether Fillo is indigent and to strike the crime victim penalty assessment (CVPA) and community custody supervision fee.

We hold that the trial court failed to meaningfully consider Fillo's youth. Thus, we reverse Fillo's sentence and remand for resentencing.[1]

FACTS

Fillo was born in 2003 and raised in foster care. In 2023, Fillo's younger foster sister, FW, told their foster mother about several incidents where Fillo sexually assaulted her. The incidents occurred between 2015 and 2019, when Fillo was between 11 and 15 years old. Fillo was 19 years old when he was arrested.

The State charged Fillo with two counts of first degree rape of a child and one count of first degree child molestation. The State later filed an amended information alleging that the offenses were part of an ongoing pattern of sexual abuse.

Fillo eventually pleaded guilty to one count of first degree child molestation. In exchange for Fillo's plea, the State agreed to recommend a sentence of 98 months, which was the bottom of the standard sentencing range.[2]

A.    PRESENTENCE INVESTIGATION

The trial court ordered a presentence investigation report (PSI). The PSI summarized Fillo's history. Fillo was adopted when he was three days old because both of his biological

---

[1] Because we reverse Fillo's sentence based on the trial court's failure to meaningfully consider Fillo's youth, we do not reach Fillo's claims that the prosecutor breached the plea agreement or that he received ineffective assistance of counsel. And because we remand for resentencing, we do not address Fillo's challenge to the community custody condition prohibiting Fillo's contact with all minors and the imposition of the CVPA and community custody supervision fee. Fillo may raise these issues with the trial court at resentencing.

[2] Because the offense occurred when Fillo was a juvenile, Fillo was not subject to an indeterminate sentence or Indeterminate Sentencing Review Board jurisdiction. RCW 9.94A.507(2).

parents were in prison. Fillo estimated that his adoptive parents fostered roughly 50 children over the course of his childhood. Fillo was diagnosed with attention deficit hyperactivity disorder (ADHD) and fetal alcohol syndrome as a young child.[3]

The PSI explained that in 2019, an older sister caught Fillo naked in bed with FW.[4] As a result of that incident, Fillo had a prior juvenile adjudication for fourth degree assault with a sexual motivation. Due to incidents with other individuals, Fillo's criminal history also included juvenile adjudications for possession of depictions of a minor engaged in sexually explicit conduct in 2016 and second degree rape of a child in 2021. The charged events in this case occurred between January 2015 and January 2019, before Fillo was caught assaulting FW and adjudicated for fourth degree assault with a sexual motivation (which, according to FW, was the last time Fillo assaulted her). Fillo would have been between 11 and 15 years old at the time of the charged events.

The PSI reported that Fillo earned his GED (general education development) at a juvenile rehabilitation facility in 2021. Since his last release from confinement in 2021, Fillo had worked an array of jobs and was employed at a seafood company when he was arrested. And the PSI stated that Fillo was expecting a daughter to be born in September 2023.

---

[3] Fetal alcohol symptoms are lifelong and can include issues with learning and thinking, such as "[n]ot understanding the results of choices made" and "[p]oor judgment skills, such as having a hard time thinking through issues, problem-solving, reasoning and making decisions that affect everyday life." *Fetal Alcohol Syndrome*, MAYO CLINIC (June 13, 2024) https://www.mayoclinic.org/diseases-conditions/fetal-alcohol-syndrome/symptoms-causes/syc-20352901 (last visited May 19, 2025).

[4] The PSI narrative says that this event occurred in 2015 but Fillo's criminal history shows the associated adjudication with an offense date of 2019.

The PSI included a statement from Fillo: "The Defendant stated . . . that he would like everyone to know that he is remorseful for his actions and that he is sorry for what he put the victim and his parents through." Clerk's Papers (CP) at 33. Additionally, "[h]e is willing to participate in sex offender treatment and believes he would benefit from it. He would like to participate in sex offender treatment while incarcerated." CP at 35.

B.      MOTIONS TO WITHDRAW PLEA AND TRANSFER TO JUVENILE COURT

Before his sentencing, Fillo filed two pro se motions, seeking to withdraw his plea agreement as involuntary and to transfer his case to juvenile court for eventual dismissal based on an involuntary plea. Fillo believed that, because he was a juvenile when he committed his offense, he was subject to juvenile court jurisdiction and should have received a decline hearing before proceedings began in adult court. Fillo also believed that his attorney's failure to investigate or raise this issue constituted ineffective assistance of counsel. And Fillo argued that mitigating factors applied to his case, such as his diagnosis of ADHD, the fact that he himself had been molested by an older sister, and that he had not re-offended since his last release. Fillo contended that, because he did not know that his case should have been in juvenile court, his guilty plea was involuntary. Based on the ineffective assistance of counsel claim, defense counsel moved to withdraw before the sentencing hearing began.

The trial court explained that "juvenile court jurisdiction is based on the date charged, not the date of the offense." Verbatim Rep. of Proc. (VRP) (June 30, 2023) at 7. Because Filo was 19 when he was charged, even though he was between 11 and 15 when he committed his offense, there was no need for a decline hearing. *See State v. Calderon*, 102 Wn.2d 348, 351-52, 684 P.2d 1293 (1984). Accordingly, the trial court denied Fillo's motions to withdraw his plea and transfer

4

the case to juvenile court. The trial court also denied defense counsel's motion to withdraw because "[y]ou can't fail to give advice to somebody when the advice is not legally correct." VRP (June 30, 2023) at 9.

C.    SENTENCING HEARING

1.    Parties' Arguments

At sentencing, the State argued that Fillo's youth did not excuse his crimes. The State also commented that Fillo's actions of filing the motions to withdraw his plea and transfer his case to juvenile court had made the prosecutor think twice about the State's promise to recommend the bottom of the standard sentencing range in exchange for Fillo's guilty plea:

> I think that Mr. Fillo, in addition to the damage that he's done to his sister, represents a substantial risk to this community. This is not his only victim of sexual assault. He has one other conviction for rape of a child in the second degree, assault fourth sexual motivation, and a possession of depictions of a minor engaged in sexually explicit conduct where he essentially threatened another child to provide him with child-pornographic images of herself under the threat that he would otherwise expose her to other people at their school. That was extremely devastating for that little girl as well.
>     I looked at all of that. And I looked at the fact that, again, this is someone that I think poses a substantial risk to children, to women, to anyone who is vulnerable, and I considered the fact that he has had a very difficult start to his life. There's likely fetal alcohol exposure. He was a victim himself. He was under 18 when he committed these many, many different sexual offenses against many different children. And I recognize that the state of the law in Washington and of the science is such that children are different and that we need to consider that differently and give them the opportunity for rehabilitation. And so in weighing all of those factors, I came to the decision that rather than pursuing convictions for all of the conduct that he did, in fact, engage in which would result in a sentence of more than 20 years in prison, I gave him the opportunity to take responsibility and plead guilty to one count for the bottom [of] the range, which is 98 months.
>     And as we sit here today, given what has taken place, there is part of me that thinks that he is in breach of that agreement and that I should ask for more time. I'm going to chalk up what he has done today again to that youthfulness and to that inability to reflect appropriately on the consequences of his behavior, so I will stand by the recommendation of 98 months. I think that Mr. Fillo needs to take this time

5

in prison very seriously. I think that he is at serious risk of being adjudicated as a sexually violent predator upon being released from prison and I think that how he performs in his sexual offender treatment in prison will largely determine the outcome of the rest of his life.

So with all of that said, I would ask for 98 months, 36 months community custody.

VRP (June 30, 2023) at 10-12. And Fillo's adoptive mother filed a victim impact statement discussing the impact of Fillo's crime on FW.

Defense counsel's sentencing memo stated:

The defendant's conduct is well described. Admittedly his history is worrisome, but it has to be recognized that it all happened when he was under 18 and before he was sent to [juvenile rehabilitation], and there is no allegation that he has offended again after his release. He has a child on the way and wants to act as a father. It should further be recognized that he probably suffers from fetal alcohol effect, and started life at a serious disadvantage as a result.

Because this happened as a juvenile, the Court has discretion to impose any sentence below the standard range. The bottom of the standard range is more than sufficient on these facts.

CP at 94. And defense counsel argued at sentencing:

Your Honor, [Fillo] definitely did not get off to a good start in life and I think we're seeing the effects of that right now. What I would emphasize is that since he went to [juvenile rehabilitation] about two years ago . . . there's no allegation that he's committed another sex offense and I think that has to be taken in his favor. So I would ask you to sentence him at the bottom of the range as requested by the State.

VRP (June 30, 2023) at 12-13.

Fillo also spoke at sentencing, thanking his parents and stating, "I have very much thought in depth about these crimes." VRP (June 30, 2023) at 13. With regard to his motions to withdraw his plea and transfer his case to juvenile court, Fillo stated, "I don't want to say that I'm hiding, getting away from it." VRP (June 30, 2023) at 13. Fillo explained that he believed that the juvenile justice system had better options for sex offender treatment than the Department of Corrections.

6

"I'm not asking for lesser time. I'm asking that . . . we have the power to send me to [juvenile rehabilitation] to get five years of that hard core treatment there. And that's what I'm arguing. I'm not trying to argue with anything else." VRP (June 30, 2023) at 15. "I would really please hope that this should be recommended to Green Hill School," a maximum security juvenile rehabilitation facility, "for the first five years." VRP (June 30, 2023) at 15.

2.     Trial Court Ruling

The trial court observed that, although a different judge had presided over Fillo's prior cases:

> I'm familiar with them and . . . I know that every effort was made . . .when you were charged in juvenile court . . . to find another solution other than just warehousing you. And that—that's because we do take youthfulness into account. We do take the potential for rehabilitation into account.

VRP (June 30, 2023) at 16. The trial court then commented that Fillo appeared to lack remorse:

> And then you have your sister—your poor sister who has been victimized, through no fault of her own. She didn't do anything wrong, you know. And what's really sad is to see where you're at with this. And it's not just—[the prosecutor] is correct. The filing of this motion, I think regardless of whether it's legally correct . . . the fact that you took this tact to file this and try to seek, you know, avoidance of punishment, I get it. That's the youthful brain. That's a byproduct. You didn't even make one single mention—I was listening. I listened to your whole statement and you didn't say one single word. You . . . thanked your parents for being here, which I agree with that se[nt]iment. Your parents are probably here for both of you, if I had to guess, considering the circumstances, right. But you did not make one single reference to the acts you committed, to the welfare of your sister, to the effects that it would have on her. I'm assuming that you read the victim impact statement.
>
>          . . . .
>
>          . . . Well, it's a statement . . . about the effects on your sister. And they are not insignificant. And I'm sure as you—I'm sure you know that, right. You, yourself, were offended against and I'm sure understand from the prior cases in juvenile court that being a victim of these types of actions can have lifelong

7

repercussions. And this conduct here that you committed is egregious and significant and severe. I mean, . . . there were three charges here. You were facing . . . over 20 years as charged. And because of everything I've just said basically, I guess mitigation—that's term that comes to my mind—you were allowed to plead down to one count with . . . a much shorter range. So—and now I'm being asked by you . . . and your attorney, and rightly so, it's certainly appropriate to argue for that, but you want less time. And I have the discretion. As I said earlier, there's no question that when an adult is charged with an offense committed as a minor that the Court is not bound by the adult sentencing guidelines. There are guidelines in that. They're not mandated, not like with adults. They're just advisory. I can, at my discretion, go below the bottom of the range for any good reason, at my discretion.

VRP (June 30, 2023) at 16-18. The trial court explained that Fillo's lack of remorse was a defining factor in its sentencing decision:

[D]espite the egregiousness of this, I came in here with the exact kind of attitude, exact kind of opinion of this case and the feeling about it, sort of what your attorney expressed . . . in the briefing. And even the State acknowledged this, right, about your history of abuse and your youthfulness and all of this. But you know what I can't get over? The thing that really swings it the other way for me is what I'm seeing from you. I mean no disrespect, Mr. Fillo, but your lack of remorse—your complete lack of remorse and . . . this tact you have taken . . . that gives me a lot of insight to where you're at. . . . [A]nd that kind of insight is the kind of insight that leads you to not meaningfully engage in your treatment, . . . re-offending, being held longer, having a lot of issues and you end up . . . going nowhere. And it creates a huge—it's a huge—your risk level right now, if you were to have a professional assessment of your risk level to re-offend sexually, it would be off the charts. I don't have an assessment of that nature, I'm not looking at one. But if you had one, it would not look good. Perhaps not relevant now, . . . but certainly could become relevant at a later date. I'm just shocked and . . . I'm concerned about the psychopathy, quite frankly, of your tact on this. Your lack of taking remorse and willingness to address these things. I don't know. You can't write that all off to youth. I mean you can write some of it off to youth, but not all of it. And I hope that when you're at Department of Corrections, . . . I hope that somehow against what I would say of the odds, I hope somehow you have a change of heart and you invest yourself in the treatment and really make an active change, like a change to . . . yourself, right. We know . . . it's a form of mental illness, right. Sexual deviancy is a form of mental illness. It is. There's treatment for it. It's not always effective, like any treatment. But if you put your back into it and your heart into it, you might be able to get released after serving your time and you might be able to turn things around. That is the only hope that you have. If not, you will be in this

system and in this cycle of offenses in prison for the rest of your life and that's just the way it is. We know that . . . sexual deviancy, it's not like drugs where someone can quit cold turkey. That's hard enough. You can't quit sexual deviancy cold turkey. It's impossible. It can't be done and the studies bear that out. It's not something that goes away. Unfortunately, you got it and that's—that's not your fault, actually. It's actually not your fault that you ended up in that state, because the abuse against you was not your fault, but your actions are. You're responsible for your actions and you apparently haven't learned anything.

So I can't—there's no way in good conscience I can go below. I can't do it. I might have considered it, but you put the final nail in the coffin on that. So the only question now is what do I do. Do I do the bottom of the standard range? That's . . . the recommendation of the parties or do I not follow that? And that— that's a tougher question. That's a little closer question for me. To be honest with you, . . . I am leaning towards imposing the top of the standard range and not as a consequence—not as a punishment, not because I'm mad or upset with you for what you've done or what you're doing now. It's because the longer you're in, I think it's going to save you time in the long run. I'm actually doing you a favor. If we can squeeze the most out of this prison term, you'll get more treatment when you come out, you've got a better shot at avoiding going back. That's what I think. That's what—I think the only shot that we have.

So as a result, I'm imposing the top of the standard range. . . . [T]hat has to be the outcome here, given the circumstances that I face.

VRP (June 30, 2023) at 20-23.

The trial court imposed a sentence of 130 months, the top of the standard sentencing range, and 36 months of community custody. The judgment and sentence also imposed community custody conditions, repeated in several places, ordering Fillo to "[h]ave no contact with juveniles under 18 years of age" and "[h]ave no contact with juveniles under 18 years of age unless under supervision of an adult who is aware of this conviction and the conditions of supervision and approved by his/her therapist and CCO, and notification to parents of the juvenile." CP at 67, 70, 72-73. And the judgment and sentence imposed the CVPA and community custody supervision fees.

Fillo appeals.[5]

## ANALYSIS

### A.   MEANINGFUL CONSIDERATION OF YOUTH

Fillo argues that the trial court failed to meaningfully consider the mitigating qualities of youth at his sentencing as required by *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017).  Although the trial court acknowledged that it had discretion to impose a mitigated sentence based on Fillo's youth, Fillo asserts that the trial court failed to "'*meaningfully consider* how juveniles are different from adults, [and] how those differences apply to the facts of the case.'" Br. of Appellant at 19 (alteration in original) (quoting *State v. Stewart*, 27 Wn. App. 2d 441, 447-48, 532 P.3d 211 (2023)).  Fillo contends that the trial court "paid lip service" to certain factors but "never considered how factors like Mr. Fillo's early childhood experiences, fetal alcohol syndrome, and ADHD impacted his decision-making at the time of the offense." Br. of Appellant at 23.  Fillo also contends that the trial court instead focused on his failure to apologize to FW during his allocution and his motions to withdraw his guilty plea, which had no bearing on Fillo's "age, impaired evaluation of the consequences, or impulsivity *at the time of the offense*." Br. of Appellant at 24.  Fillo emphasizes that, even though his pro se motions were based on a misunderstanding of the law, he would have been "well within his rights" to request a transfer to juvenile court if he had been correct.  Reply Br. of Appellant at 3.  And Fillo's request to be sent to a juvenile rehabilitation facility, which the trial court construed as an attempt to avoid adult

---

[5]  At sentencing, Fillo told the trial court that he wanted to appeal, and the trial court agreed that "[t]hat's absolutely your right" and explained the procedure for appealing.  VRP (June 30, 2023) at 23.  But trial counsel never filed a notice of appeal.  Appellate counsel filed a late notice of appeal in September 2023 and a motion to enlarge time which we granted, allowing Fillo's appeal.

accountability, was in fact based on a 2019 amendment to RCW 72.01.410 that required adults convicted of felonies committed when they were juveniles to be initially placed in a facility operated by the Department of Children, Youth, and Families until the age of 25.

The State insists that the trial court considered the mitigating qualities of Fillo's youth. The State asserts that the trial court "repeatedly referred to Defendant's youthfulness, his diagnoses, his childhood and abuse, and his lack of brain development." Br. of Resp't at 18. "The court gave sufficiently meaningful consideration of the mitigating factors; they simply did not outweigh Defendant's criminal history, lack of remorse and lack of accountability." Br. of Resp't at 18. The State also asserts that the "plea agreement itself was evidence that the State and the trial court acknowledged the mitigating factors of Defendant's youth." Br. of Resp't at 20. The State argues that the sentence imposed "does not shock the conscience nor is it disproportionate to Defendant's repeated crimes." Br. of Resp't at 21. And the State implies that Fillo was barred from appealing based on the plea agreement and because he received a standard range sentence.

### 1. Legal Principles

*Houston-Sconiers* imposed two mandates for courts sentencing defendants for crimes committed when under the age of 18: "sentencing courts *must* consider youth and *must* have discretion to impose any exceptional sentence downward based on youth." *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 236, 474 P.3d 507 (2020), *cert. denied*, 141 S. Ct. 1754 (2021). When sentencing a defendant for a crime committed as a juvenile, a trial court must consider five factors:

> (1) the juvenile's age, immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the nature of the juvenile's family circumstances and surrounding environments; (3) the juvenile's participation in the crime and the effect of any family or peer pressures; (4) how the juvenile's youth impacted the legal defense; and (5) the juvenile's chances of being successfully rehabilitated.

*Stewart*, 27 Wn. App. 2d at 447. Youth is not a per se mitigating factor, and a standard range sentence may still be appropriate if the defendant does not show that "their immaturity, impetuosity, or failure to appreciate risks and consequences . . . contributed to the commission of their crime." *State v. Anderson*, 200 Wn.2d 266, 285, 516 P.3d 1213 (2022); *In re Pers. Restraint of Forcha-Williams*, 200 Wn.2d 581, 605-06, 520 P.3d 939 (2022).

The State asserts that the published cases Fillo relies on—*Houston-Sconiers*, *Stewart*, and *In re Pers. Restraint of Carrasco*, 1 Wn.3d 224, 525 P.3d 196 (2023)—are inapplicable because they address resentencings under *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) and Washington's *Miller*-fix statute, RCW 10.95.030, which require a greater degree of scrutiny than standard sentencing hearings. However, the Washington Supreme Court has adopted the standard from *Miller* hearings for original sentencing hearings for juvenile offenders: to meaningfully consider youth, a trial court "'must do far more than simply recite the differences between juveniles and adults and make conclusory statements' about the defendant's culpability." *In re Pers. Restraint of Frazier*, 4 Wn.3d 1, 27, 558 P.3d 451 (2024) (internal quotation marks omitted) (quoting *State v. Delbosque*, 195 Wn.2d 106, 121, 456 P.3d 806 (2020)); *see also Stewart*, 27 Wn. App. 2d at 447. "'[T]he court must receive and consider relevant mitigation evidence bearing on the circumstances of *the* offense and the culpability of *the* offender, including both expert and lay testimony as appropriate.'" *Frazier*, 4 Wn.3d at 27 (internal quotation marks omitted) (quoting *Delbosque*, 195 Wn.2d at 121).

And the trial court "must *meaningfully consider* how juveniles are different from adults, [and] how those differences apply to the facts of the case." *State v. Ramos*, 187 Wn.2d 420, 434-

45, 387 P.3d 650, *cert. denied*, 583 U.S. 995 (2017) (emphasis added). "Unless the court meaningfully considers youth and knows it has absolute discretion to impose a lower sentence, we cannot be certain that an adult standard range was imposed appropriately on a juvenile under *Houston-Sconiers*." *In re Pers. Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 268, 474 P.3d 524 (2020), *cert. denied*, 141 S. Ct. 1753 (2021).

Although a defendant usually cannot appeal a sentence within the standard range, "[w]hether or not the trial court meaningfully considered the mitigating characteristics of youth as *Houston-Sconiers* requires is a matter of procedure, and therefore a defendant may appeal regarding that issue." *Stewart*, 27 Wn. App. 2d at 449. "When a trial court is called on to make a discretionary sentencing decision, the court must meaningfully consider the request in accordance with the applicable law." *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). A trial court abuses its sentencing discretion if it relies on an impermissible basis for its sentencing decision. *Id.* "On direct appeal, the defendant needs only to establish the existence of the *Houston-Sconiers* error in order to be entitled to a new sentencing hearing" *Carrasco*, 1 Wn.3d at 230.

2.      The Trial Court Did Not Meaningfully Considered Fillo's Youth

Here, the information presented at sentencing included the PSI, the parties' briefs and argument, Fillo's motions, and Fillo's allocution. The PSI explained that Fillo's biological parents were incarcerated, Fillo had diagnoses for ADHD and fetal alcohol syndrome, he had earned his GED in a juvenile rehabilitation facility and been employed since his last release, he was expecting a daughter in September 2023, he was "remorseful for his actions and . . . sorry for what he put the victim and his parents through," and he wanted to participate in sex offender treatment while incarcerated. CP at 33. And Fillo's pro se motions and the prosecutor's statements informed the

trial court that Fillo himself had been molested by an older foster sister. The trial court failed to consider most of this information as it related to the applicable *Houston-Sconiers* factors.

Factor 1 is the juvenile's "age and its 'hallmark features,' such as the juvenile's 'immaturity, impetuosity, and failure to appreciate risks and consequences.'" *Houston-Sconiers*, 188 Wn.2d at 23 (quoting *Miller*, 567 U.S. at 477). Here, the trial court did not discuss Fillo's immaturity, impetuosity, or failure to appreciate consequences *at the time of the crime*; the trial court only cursorily mentioned Fillo's youth in the context of 19-year-old Fillo's decision to file his pro se motions seeking a transfer to juvenile court. The trial court also did not mention Fillo's ADHD or fetal alcohol syndrome diagnoses.

Factor 2 is "the nature of the juvenile's surrounding environment and family circumstances." *Id.* The trial court acknowledged Fillo's "history of abuse," but said that the impact of the abuse was overridden by Fillo's pro se motions and "complete lack of remorse" at sentencing. VRP (June 30, 2023) at 20. The trial court did not mention Fillo's experience of being raised in foster care or the fact that his birth parents were incarcerated, and made only a passing reference to Fillo being sexually abused himself by his older foster sister.

Factor 3 is "the juvenile's participation in the crime and the effect of any family or peer pressures." *Stewart*, 27 Wn. App. 2d at 447; *Houston-Sconiers*, 188 Wn.2d at 23. Again, the trial court did not make any note of items such as Fillo being raised in foster care because his birth parents were incarcerated. And the trial court decided that Fillo's own experience of abuse at the hands of his older foster sister was outweighed by his "lack of remorse," disregarding Fillo's PSI statement apologizing for what he put FW and his family through. VRP (June 30, 2023) at 20

Factor 4 is the impact of youth on any legal defense. This factor is not applicable to this case because Fillo pleaded guilty.

Factor 5 requires a trial court to consider "any factors suggesting that the child might be successfully rehabilitated." *Houston-Sconiers*, 188 Wn.2d at 23. Fillo repeatedly expressed interest in treatment in both his PSI statements and allocution, which the trial court disregarded. Rather, the trial court expressed an expectation that Fillo would not meaningfully engage in treatment due to the court's perception that Fillo lacked remorse. Additionally, the trial court presupposed an outcome of an expert assessment that did not exist, stating, "if you were to have a professional assessment of your risk level to re-offend sexually, it would be off the charts." VRP (June 30, 2023) at 20. And the trial court did not comment on the evidence that Fillo had avoided reoffending since his last release in 2021.

Although there was mitigation evidence before the trial court, the trial court disregarded or recharacterized the mitigating evidence that was presented, including Fillo's expressed remorse and clear interest in participating in sex offender treatment. Instead, the trial court focused heavily on the court's own perception that Fillo lacked remorse. While the trial court acknowledged that Fillo may have filed his motions to withdraw the plea and transfer the case to juvenile court because of his youth, the court proceeded to construe Fillo's motions as evidence of his lack of remorse, despite the fact that the motions were based on Fillo's misunderstanding of the law. Moreover, had Fillo's misunderstanding of the law been correct, he certainly would have been within his rights to seek a transfer to juvenile court. But the trial court construed Fillo's filing of the motions against him and said, "I'm concerned about the psychopathy, quite frankly, of your tact on" filing those motions. VRP (June 30, 2023) at 21.

In short, the trial court failed to consider the incarceration of Fillo's parents, Fillo's upbringing in foster care, or his diagnoses with two different conditions that could have significant impacts on his judgment. The trial court paid lip service to *Houston-Sconiers* factors 1 and 2 but did not meaningfully consider how Fillo's medical diagnoses, youth at the time of his crime, or his family circumstances including his molestation by his older foster sister impacted his crime. The trial court disregarded evidence relevant to factor 3. As for factor 5, the trial court disregarded evidence of Fillo's desire to participate in treatment and instead presupposed without evidence that he was likely to fail to rehabilitate.

The trial court failed to meaningfully consider how Fillo's youth mitigated his culpability in violation of *Houston-Sconiers*. 188 Wn.2d at 23. Therefore, we reverse Fillo's sentence and remand for resentencing.

B.    APPEARANCE OF FAIRNESS

Fillo asks this court to remand for resentencing before a different judge based on the appearance of fairness doctrine. The judge who sentenced Fillo is no longer on the bench. Therefore, because any issues on remand will be addressed by a different judge, this issue is moot.

CONCLUSION

Because the trial court failed to meaningfully consider Fillo's youth at sentencing, we reverse Fillo's sentence and remand for resentencing.

16

No. 59360-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, C.J.

Che, J.