IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40775-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LELAND JAMES WESTERLUND, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

HILL, J. — Leland Westerlund pleaded guilty to one count of first degree murder and two counts of first degree robbery based on events that occurred when he was 16 years old. In consideration of Westerlund's age and troubled childhood, the parties agreed to recommend an exceptional downward sentence. The State recommended 37.25 years, and Westerlund recommended 22.25 years. The court, after making an extensive record pursuant to the *Houston-Sconiers* mandate,[1] determined Westerlund's

---

[1] *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017).

youth played a role in the commission of the crimes.  The court imposed an exceptional downward sentence of 32 years.

Westerlund now appeals his sentence on two grounds.  First, he contends that the sentencing court erred in including his previous juvenile convictions in his offender score because an amendment to former RCW 9.94A.525(1), effective on July 23, 2023, precluded the inclusion of such convictions in offender score calculations.  LAWS OF 2023, CH. 415, § 2.  Second, he contends the court did not properly consider his youth at sentencing by overemphasizing punishment and retribution while underemphasizing rehabilitation and by improperly incorporating the Sentencing Reform Act (SRA), chapter 9.94A RCW, principles into its decision.  We disagree with both contentions and affirm Westerlund's sentence.

## BACKGROUND

In February 2023, Westerlund, age 16, and two adult males met with cannabis oil dealers whom they intended to rob.  Upon approaching the dealers, Westerlund began shooting a firearm, killing one of the dealers and severely wounding the other two.  One of Westerlund's companions drove the victim's vehicle from the scene, while Westerlund and the other adult male fled on foot.

Westerlund was later arrested and charged.  As part of a plea agreement, the charges were reduced to one count of first degree murder and two counts of first degree

assault. This reduction was significant, as Westerlund's original charges included additional robbery counts and consecutive firearm enhancements. In addition to the benefit of fewer charges and a reduced sentencing range, the parties agreed to request that the court impose an exceptional downward sentence in consideration of Westerlund's youth at the time of the commission of the crime. The State would recommend a sentence of 37.25 years, and Westerlund would ask for a 22.25 year sentence.

Prior to sentencing, the parties provided the court with a report by Dr. Nathan Henry, who conducted a forensic mental health evaluation on Westerlund to assess whether his crimes reflected youthful immaturity, impetuosity, and a failure to appreciate risks and consequences. The evaluation was thorough, covering various aspects of Westerlund's extremely difficult childhood and his mental development. The court also reviewed the parties' sentencing briefs, which incorporated Dr. Henry's evaluation and the applicable law for sentencing a youth in adult court.

At sentencing, the court first heard from the surviving victims and several family members. Westerlund gave a short allocution apologizing for his actions. The State addressed the mitigating factors of youth and agreed that Westerlund's youthfulness impacted the crime. However, the State argued it took Westerlund's youth into account in its plea agreement and sentencing recommendation. Westerlund's attorney acknowledged that the parties "worked through all the various nuances in the law

regarding children" before addressing each of the factors and their application to the case. Rep. of Proc. (RP) at 65.

The court thoroughly analyzed the facts before it through the *Houston-Sconiers* framework and determined that Westerlund's youth played a factor in the commission of the crimes. The court imposed an exceptional sentence downward of 32 years (384 months).

Westerlund appeals. He alleges the sentencing court erred by including his previous juvenile convictions in his offender score. He also alleges that "the trial court underweighed his potential for rehabilitation and overweighed punishment and retribution when it sentenced him to 32 years in prison." Reply Br. of Appellant at 25.

## ANALYSIS

*Juvenile Convictions*

Westerlund argues the trial court erred when it included his prior juvenile convictions in his offender score. Specifically, Westerlund argues that a 2023 amendment to former RCW 9.94A.525(1) applies prospectively to his sentencing. This statute now prohibits the court from including most juvenile felony convictions in the defendant's offender score. The amendment became effective after Westerlund committed his current offenses but before his sentencing. Whether to apply the statute

prospectively or retrospectively is a matter of statutory construction, which we review de novo. *State v. Schwartz*, 194 Wn.2d 432, 438, 450 P.3d 141 (2019).

While Westerlund's appeal was pending, we decided this issue in *State v. Boyce*. "We conclude[d] that the legislature did not intend for RCW 9.94A.525(1)(b) to apply retroactively." No. 40700-4-III, slip op at 6 (Wash. Ct. App. Apr. 30, 2026). We need not address this issue further as there is nothing in Westerlund's argument to distinguish his case from *Boyce*. We therefore conclude Westerlund's juvenile convictions were properly included in his offender score as Westerlund's crimes occurred prior to the statute's amendment.

*Youth*

Westerlund also contends that the court did not meaningfully consider the mitigating qualities of his youth at sentencing. However, his specific argument is more nuanced. Westerlund does not argue that the court was unaware it had discretion to impose a sentence below the standard range or that it failed to address juvenile brain development. Nor does Westerlund argue that the court failed to conduct "a thorough hearing based on a clear understanding of [the juvenile sentencing factors] and the role the mitigating qualities of youth must play in sentencing a juvenile offender as an adult." *See State v. Anderson*, 200 Wn.2d 266, 275, 516 P.3d 1213 (2022).

Instead, Westerlund argues that some of the trial court's comments during

sentencing show that it (1) overemphasized punishment and discounted Westerlund's

potential for rehabilitation by ignoring current science and (2) improperly relied on the

SRA principle of commensurate sentencing, while simultaneously sentencing Westerlund

to a sentence that was not commensurate with other defendants. *See* Reply Br. of

Appellant at 26.

This court will only reverse a sentencing court's decision if we find a clear abuse

of discretion or misapplication of the law. *State v. Haag*, 198 Wn.2d 309, 317, 495 P.3d

241 (2021). A sentencing court abuses its discretion when its decision is manifestly

unreasonable or based on untenable grounds. *Id.* "'A decision is based on untenable

grounds when its factual findings are unsupported by the record.'" *Anderson*, 200 Wn.2d

at 286 (quoting *Haag*, 198 Wn.2d at 317)). We review the sentencing court's findings of

fact for substantial evidence. *Id.*[2] "Substantial evidence exists where there is a sufficient

---

[2] The State argues that Westerlund cannot appeal his sentence because he was not aggrieved by it; i.e., because Westerlund received an exceptional downward sentence due to his youthfulness. We disagree with this argument. Regardless of the sentence Westerlund received, the court was required to "meaningfully consider how juveniles are different from adults, how those differences apply to the facts of the case, and whether those facts present the uncommon situation where the juvenile offender is just as culpable as an adult offender." *Anderson*, 200 Wn.2d at 286 (quoting *State v. Ramos*, 187 Wn.2d 420, 435, 387 P.3d 650 (2017)). Since Westerlund challenges the court's application of this mandate, his sentence may still potentially fall under RAP 3.1's definition of an "aggrieved party" who may seek appellate review. *See State v. Rogers*, 17 Wn. App. 2d 466, 468, 487 P.3d 177 (2021) ("recognizing that standardless and unreviewable sentencing could both allow arbitrary and biased decision-making and run afoul of our

quantity of evidence in the record to persuade a fair-minded, rational person of the truth

of the finding." *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

Under the dual mandate articulated in *Houston-Sconiers*, a sentencing court has

complete discretion to impose an appropriate sentence for a particular juvenile. In

crafting such a sentence, the court must consider the potential mitigating qualities of

youth. 188 Wn.2d at 23. These mitigating factors include:

> (1) the juvenile's age, immaturity, impetuosity, and failure to appreciate
> risks and consequences; (2) the nature of the juvenile's family
> circumstances and surrounding environments; (3) the juvenile's
> participation in the crime and the effect of any family or peer pressures; (4)
> how the juvenile's youth impacted the legal defense; and (5) the juvenile's
> chances of being successfully rehabilitated.

*State v. Stewart*, 27 Wn. App. 2d 441, 447, 532 P.3d 211 (2023); *see also Houston-

Sconiers*, 188 Wn.2d at 23; *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 236, 474 P.3d

507 (2020). The sentencing court also must meaningfully consider the differences

between juveniles and adults, as well as how those differences apply to the case. *Stewart*,

27 Wn. App. 2d at 447-48.

As Westerlund does not contest that the court recognized its discretion to craft a

sentence outside the standard range or that it failed to thoroughly discuss each of the

---

state constitution's guaranty of a defendant's right to an appeal, such decisions must be
capable of being entertained on appellate review.")

*Houston-Sconiers* factors before finding Westerlund's youth played a role in the commission of the crime, we focus only on his specific contentions regarding retribution and commensurate sentencing.

Westerlund argues that although the court found his youth impacted the crime when it imposed a sentence below the standard range, the court's sentence shows it must not have truly appreciated the science surrounding youth brain development, which presents greater possibilities for rehabilitation. As Westerlund argues in his reply brief, "[s]imply acknowledging the truth that a child can rehabilitate is insufficient—the child's sentence must actually reflect that truth." Reply Br. of Appellant at 34. Westerlund reiterates this claim throughout his briefing, arguing that "[a] 32 year sentence for a child cannot reflect anything but a desire for retribution and punishment," and "a 32 year sentence does not support [Westerlund's] rehabilitation, does not reflect scientific consensus, and does not reflect a belief that [Westerlund]—a child—can change." Br. of Appellant at 52-53, 56.

To support his argument, Westerlund points to some of the court's comments that, in his opinion, show the court "relied on the now-debunked trope that some children lack humanity, cannot change, and should be punished accordingly."

Br. of Appellant at 52.  However, the comments Westerlund refers to occurred while the

court was explaining the sentencing procedure to the victims and the victims' families,

before the court began its analysis.

The court explained how the law regarding juvenile sentencing has changed, not

because "somebody wants to be soft on crime" but because of science and research.

RP at 74.

The court said:

Frankly, on the one hand, it can be easy to say send [Westerlund] to jail
until he's 80 years old.  It's potentially an easy decision, off he goes, and no
one thinks about it again.  It is not easy to look at this young man sitting
here and have some humility and humanity in planning because the act that
brings him here lacks humanity that you all referred to for the victims in
this case."

RP at 75.

The court continued:

I can also tell you that if the Court attempts to use [sentencing] as a way to
just exact retribution . . . against [Westerlund] on behalf of the victims,
which is what you all seek, and I certainly understand that we will be back
here doing this again.  That's what the law tells me I cannot do.

RP at 75.

Quite the opposite of showing the court was focusing on retribution above

punishment, we read the court's comments as an attempt to express understanding for the

victims' pain, while preparing them for, as the court explained it, "a fact-finding

9

procedure that is focused on [Westerlund] and not what happened to the victims and their families."  RP at 76.

Also contrary to Westerlund's argument, the court clearly articulated its understanding of the difference between youth and adults, both scientifically and from personal observation.  The court noted:

> There are studies about the youthful brain, which have changed how the courts treat youthful offenders.  Youth are different from adults.  They are not mature, they do not make mature decisions.  I have yet to meet a 14, 15, or 16-year-old who doesn't think they are mature enough to make these decisions that they're entitled to.  It's an indication of youth in my opinion.  The systems, all the systems in a youth are still developing, but most specifically with regards to brain development.

RP at 77.

The court acknowledged that "youth have the ability to mature and change," particularly in an environment that provides the tools for growth.  RP at 84.  The court recognized that, despite Westerlund's criminal history and his actions in this case, he had the ability to change.

We see no evidence that the court overemphasized punishment to the detriment of rehabilitation.  Regardless, as our Washington Supreme Court has repeatedly confirmed, "[w]hile sentencing courts must focus on [the] mitigating qualities of youth, they must also consider the facts of the particular case, including those that counsel in favor of punishment."  *Anderson*, 200 Wn.2d at 286.  Once a trial court considers the qualities of

10

youth at sentencing, nothing prohibits it from imposing a lengthy sentence. *See Pers. Restraint of Ali*, 196 Wn.2d at 239-40; *In re Pers. Restraint of Forcha-Williams*, 200 Wn.2d 581, 605, 520 P.3d 939 (2022). The court's comments throughout the sentencing hearing showed it understood, considered, and applied the factors necessary for sentencing a juvenile in adult court.

*Commensurate Sentencing*

Westerlund also argues the court improperly considered the SRA principle of commensurate sentencing when making its decision. Specifically, Westerlund takes issue with the trial court's written findings:

> Under the Sentencing Reform Act, this court is tasked with being as even-handed in the sentencing of those who come before it for like-type sentences. The court is attempting to keep in mind those others who the Court has sentenced and to remain commensurate in sentencing but also giving weight to youthfulness as required. Accountability needs to be upheld, despite the youthfulness presented here.

Clerk's Papers at 92-93.

Westerlund argues this statement shows the court improperly resorted to the SRA to craft its sentence. He argues that once the court determines youth played a role in the crime, only constitutional principles govern sentencing, not legislative mandates. *See* Reply Br. of Appellant at 27.

In support of this argument, Westerlund cites *Rogers*, 17 Wn. App. 2d 466. But *Rogers* only reiterates the principle that "the Eighth Amendment and article I, section 14 of our state constitution require that sentencing courts have complete discretion to consider pertinent aspects of youth in arriving at a just sentence." *Id.* *Rogers* does not stand for the proposition that the court *must* entirely throw out the *principles* of the SRA, for among these principles are considerations of public safety, providing a punishment that is just, and offering the offender an opportunity to improve. RCW 9.94A.010. Here, the court understood, as articulated in *Houston-Sconiers*, that it had "absolute discretion to depart as far as [it] want[s] below otherwise applicable SRA ranges and/or sentencing enhancements." 188 Wn.2d at 9. The court was not prohibited from considering SRA principles in making its decision.

CONCLUSION

Relying on our recent decision in *Boyce*, we conclude the sentencing court correctly included Westerlund's juvenile offenses in his offender score. We also conclude the court appropriately considered Westerlund's youth at sentencing. We affirm.

12

No. 40775-6-III
*State v. Westerlund*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Hill, J.

WE CONCUR:

_____     _____
Staab, C.J.                          Murphy, J.

13